<hr/>

### BOARDMAN v. S. S. McCLURE CO.

(Circuit Court, D. Minnesota, Fourth Division. June 20, 1903.)

1. FOREIGN CORPORATIONS—SERVICE OF PROCESS—MINNESOTA STATUTE.

Under the statutes of Minnesota and the acts of Congress, governing service of process upon foreign corporations, the service must be made upon some agent who is transacting the business of the foreign corporation within the state.

2. SAME—DOING BUSINESS IN STATE.

A foreign corporation which has men sent through the country to solicit orders for goods and wares is not "doing business" wherever those solicitors go, and is not liable to be served with process by service upon such traveling men.

3. SAME—TRAVELING SOLICITORS.

A publishing corporation whose residence and headquarters are in New York City, and whose only business within the state of Minnesota is to circulate its periodicals by mail, and to send its employés into the state for the purpose of soliciting advertisements, is not "doing business" within the state of Minnesota to the extent that it can be said to be "found" in that state for the purpose of service under the acts of Congress.

4. SAME—AGENTS.

An employé who is sent into the state as traveling solicitor of advertisements, whose only authority is to take orders at rates dictated by the home company, and for space subject to the approval of the home company, and without authority to make definite contracts, is not an "agent," within the meaning of the Minnesota statutes, upon whom service of process is binding upon the corporation.

5. SAME.

The name which such person assumes, even with the knowledge of his principal, will not be controlling when the real character of his employment appears.

Action for libel by plaintiff, a citizen and resident of Minnesota, against defendant, a citizen and resident of New York.

Service of summons was made by serving on one Little, a traveling solicitor of advertisements for defendant, while within the district of Minnesota. Defendant appeared by its attorneys specially, and moved upon affidavits to set aside the service of summons on the ground that, under the state and federal statutes, the service was not binding upon the defendant.

<hr/>

¶ 1. Service of process on foreign corporations, see note to Eldred v. Palace Car Co., 45 C. C. A. 3.

¶ 2. Foreign corporations doing business in state, see note to Wagner v. Meakins, 33 C. C. A. 585.

The facts, which are not fully stated in the opinion, appear from all the affidavits as follows: Defendant corporation is in the business of publishing books and other publications, including periodicals, and including a magazine known as "McClure's." It has no agent or employé who resides in Minnesota or who has an office there. Defendant has no office in Minnesota. It circulates its magazine in Minnesota by mail from New York. The local dealers are supplied by the American News Company, and not by defendant. In its magazine business the advertising receipts are twice its circulation receipts. It does a large advertising business in Minnesota, which it obtains there through its traveling solicitors, and especially through Little, the man upon whom service in this case was made.

Little is a salaried employé of defendant, and is paid $75 a week and his expenses, including his office expenses. Little resides and has his office, maintained by the defendant, in Chicago. His office is advertised by himself and the defendant as the "Western" office of McClure's. Little designates himself on his letterheads, and in his correspondence, and on his business cards, and on the window of his office, as "Western Representative" of McClure's Magazine. The scope of his employment is that he travels from the Chicago office through different Western states, including Minnesota, at stated intervals, working up advertising business for the magazine, and soliciting and taking orders for advertising. He can only quote rates as fixed by the home office, and his orders as to space and copy are subject to the approval of the home office. He cannot make definite contracts, but takes orders and submits them to defendant. Defendant, through its home office, makes all collections and fixes the terms of payment. Complaints from Minnesota customers are submitted to Little, and through him to the home office, for adjustment. On January 26, 1903, Little was within the state of Minnesota visiting customers of the magazine, and was served with summons in the action.

Rome G. Brown and Charles S. Albert, for the motion.

Charles S. Jelley, Ralph Boardman, M. H. Boutelle, and Frank M. Nye, opposed.

LOCHREN, District Judge (orally). On this question of service of summons on alleged agents of foreign corporations the decisions are various and not at all in harmony in the different courts of the country. Like the different kinds of substituted service, this service upon corporations by service upon agents of a subordinate kind has grown up in recent years, under particular statutes of states; and, as the statutes are various, this is perhaps one reason for the differing decisions that we find in the reports.

Substituted service in respect to individuals is allowed where they have property within the jurisdiction of the court, and, if personal service cannot be had, service as provided by statute, by publication or otherwise, is allowed to the extent of affecting the property which is within the jurisdiction, although the adjudication does not stand as a judgment generally against the party. This is not one of those cases, but an action in which a judgment in personam is sought generally against the defendant, a foreign corporation, or a corporation of another state; and the question is whether this service upon Little, the traveling solicitor seeking advertisements for a publication of the defendant company is a valid service on defendant corporation, under the acts of Congress.

Formerly a corporation did not act outside of the sovereignty that created it, and within that, as a corporation has to act by officers or agents, the statutes or rules of court provided for service upon

such officers or agents. As the comity of different countries permitted corporations to act outside of the sovereignties which created them, there arose necessities, or apparent necessities, for bringing them within the jurisdiction of the courts of the states in which they did business, and that, as the occasion arose, was provided for by statutes.

The acts of Congress provide that service may be made upon them wherever they may be found, and the statutes of this state provide for service upon agents. The section providing for service upon foreign corporations is as follows:

"That the summons or any process in any civil action or proceeding wherein a foreign corporation or association is defendant, which has property within this state, or the cause of action arose therein, may be served by delivering a copy of such summons or process to the president, secretary or any other officer, or to any agent of such corporation or association; and such service shall be of the same force, effect and validity as like service upon domestic corporations." Gen. St. Minn. 1894, § 5200.

In this case it is not claimed that the defendant has any property within this state.

With respect to the cause of action, that may be claimed, perhaps, to have arisen in this state, as a cause of action on a libel arises wherever the libel is published. Service may be had upon the officers named, or any agent of such corporation or association, and such service shall have the same force and effect as like service upon domestic corporations.

Now, turning to domestic corporations, to see what "like service" would be valid, the provision is that, in an action against a corporation, "the summons shall be served by delivering a copy thereof to the president or other head of the corporation, secretary, cashier, treasurer, a director or managing agent thereof: provided, that in case none of the officers named can be found within the state, of which the return of the sheriff that they can not be found within his county shall be prima facie evidence, then the summons may be served by publication."

So that this language "any agent," in section 5200, relating to foreign corporations, would seem to be limited by its language to the preceding section, to which it refers. Service upon any agent shall have the same effect as "like service upon domestic corporations," so that it seems to be confined really to the officers named, the directors or managing agent thereof. I do not think that statute broadens or makes more numerous the persons upon whom service may be made than in case of domestic corporations, and that it will still have to be made upon some agent who is transacting the business of the foreign corporation within this state—some reasonable portion of the business—and having a charge in respect to it.

Such I considered to be the rule in the Continental Tobacco Case. The agent in that case had a place of business in St. Paul. He made contracts with the dealers in tobaccos at St. Paul and elsewhere in the state, a peculiar kind of contract, by which they were to buy tobacco exclusively of his principal, a foreign corporation, at fixed rates for the various kinds and grades of goods. The agent, or the

company (the agent really was the person using the discretion), fixed the amount of goods which the purchaser was required to buy within a given time, six months or a year, whatever it was, and, if he did purchase goods to that amount, he was entitled to a rebate for a very considerable amount. The company also, in the transaction of its business in the state, had runners who went about among the retailers of the different towns in the state, and their object was to procure orders for tobaccos, not directly to the company, but to the different persons who were the jobbers and who purchased from the company; and those agents were employed by this agent upon whom service was had, controlled by him entirely, and made their reports to him. Taking it altogether, it seems very clear that the tobacco company was doing a substantial business in this state, and had that agent here in charge of that business.

Now, I think it would be going too far to hold that under this statute a jobbing corporation who has traveling men sent through the country to solicit orders for goods or wares can be held, under a statute like this, to be doing business wherever those solicitors go, and that it is liable to be served with process by delivering copies of the process to such traveling men going about the country. They would not be transacting the general business of the corporations, which would be to sell goods—either goods that they were dealing in, or goods that they were manufacturing. Many manufacturing foreign corporations are doing business here. Many who are manufacturing farm machinery have warehouses in St. Paul and Minneapolis, and probably places in different other states where they keep their machinery for sale and sell it, and have their agents in charge making sales. No doubt they are doing business in the state. But I think that is different from a case where they merely send agents through the country to solicit orders, either from those who use the articles or from dealers in the articles.

Now, in this case service was made upon Mr. Little, who has an office in Chicago, and from the affidavits appears to have been employed in soliciting advertisements for the magazine published by the defendant company. There is no doubt that a portion of its business is the publication of these advertisements—a large and remunerative portion of the business; as much so, probably, as the literary part of the same magazine. I believe it is admitted that it is still larger. The business of the corporation, so far as concerns that magazine, is to publish the magazine and to circulate it. The evidence, so far as that goes, is that it circulates it by mail to subscribers, and that to get it into the hands of the dealers it sells it to some large company in New York, who deals in all the magazines, and furnishes them to the dealers. Its business is transacted in New York.

It does not seem to me that it is transacting business in Minnesota simply by having solicitors for advertisements here, and that appears to have been the extent of Mr. Little's business. The testimony of those who are presumed to have knowledge on the subject, of Mr. Little himself, and of Mr. Brady, is that he had no authority to make contracts, even for advertisements, but simply to solicit orders;

to procure persons to forward proposed advertisements to the company; or perhaps he took the proposed advertisements, and forwarded them himself; and that from the rates which are made public in the magazine, or in instructions which he had, he could assure the persons of whom he solicited advertisements in respect to the rates, and what would be charged for the advertisements if they were inserted; but he didn't make definite contracts. The name which such person assumes, even with the knowledge of his principal, will not be controlling, when the real character of his employment appears.

I think it was entirely like the employment of ordinary traveling men, or runners, who doubtless are able to name the prices of goods for which they seek orders, although they may not be able to make definite contracts that all these orders will be supplied. The dealer may not have the goods to supply them, and may be unable to fill the order, nor required to do it.

There are many decisions which would support this service, notably those of the state of Michigan, which would seem to be directly in point. But there are many to the contrary, which seem to me to be better considered.

I think I shall have to grant the motion.