Argued March 20, decided April 2, 1912.

## CALLENDER NAV. CO. *v.* POMEROY.

[122 Pac. 758.]

APPEAL AND ERROR—RESERVATION OF GROUNDS—CAPACITY TO SUE—PLEA IN ABATEMENT—NECESSITY.

1. Though Sections 6726-6729, L. O. L., provide that foreign corporations must do certain things to entitle them to sue in the State, and the lower court found as a fact that a plaintiff corporation had never complied with the statute, the court on appeal cannot determine the right of plaintiff to sue, where the question was not raised by a plea in abatement below, under Section 6709, L. O. L., which provides that the nonpayment of the fees required may be raised at any time before trial on the merits by a plea by any party other than the delinquent corporation, etc.

TAXATION—INJUNCTIVE RELIEF.

2. Injuction is a proper remedy to restrain a county sheriff from listing property for taxation under Sections 3679, 3680, L. O. L., which provide the procedure for the assessment of property omitted from the assessment list, where the right to have such property left off the list depends, not upon the mere irregularity or illegality of the proceedings, but upon the question whether the property is subject to taxation.

TAXATION—PERSONALTY—SITUS OF PROPERTY—DOMICILE OF OWNER—
CORPORATION—RESIDENCE OF STOCKHOLDERS.

3. Where a corporation was regularly organized in the State of Washington to transport freight, passengers, etc., by boat with its domicile in the State and its yearly meetings held therein, the fact that all of its stockholders but one removed their residence to Oregon and maintained an office there, prosecuting all the business of the company in that state, would not change the situs of boats which the company owned for the purpose of their taxation.

TAXATION—PERSONALTY—SITUS OF PROPERTY—DOMICILE OF OWNER—
CORPORATION—RESIDENCE OF STOCKHOLDERS.

4. U. S. Comp. St. 1901, p. 2808, § 4141, requires every vessel to be registered by the collector of the district, which includes the port to which such vessel shall belong at the time of her registry, which port shall be deemed to be that at or nearest to which the owner usually resides. The domicile of a Washington corporation engaged in operating boats between ports on the Columbia River was at Knappton, Washington, immediately opposite Astoria, Oregon, which is the port of entry of the collection district of Oregon, as described in U. S. Comp. St. 1901, p. 1780, § 2586, and is the port nearest Knappton. *Held,* that the requirement of registration at Astoria was compulsory upon the owners of the vessels, and the registration could not change the situs of such property for purposes of taxation.

TAXATION—PERSONALTY—SITUS OF PROPERTY—DOMICILE OF OWNER—
CORPORATION—RESIDENCE OF STOCKHOLDERS.

5. While personal property permanently located by its owner within a state is subject to taxation therein, though the residence and domicile of the owner may be elsewhere, yet where vessels of a Washington corporation were engaged in the carrying trade between Oregon and Washington, and were constantly moving back and forth on the Columbia River, there was no fixity which will take the property out of a general rule that the situs of personality follows the person of the owner so as to render them taxable in Oregon.

PROPERTY—PERSONAL PROPERTY—"SITUS."

6. "Situs" or situation imports fixeoness of location, and while in its natural signification the term is applicable only to landed estates which are really, fixed and immovable, it is also applied to personal property as annexing it to the individual to whom it belongs.

TAXATION—PERSONALTY—SITUS OF PROPERTY—DOMICILE OF OWNER—
CORPORATION—RESIDENCE OF STOCKHOLDERS.

7. That boats belonging to a Washington corporation docked and used as their base of operations an Oregon port which was the center of commerce upon the river upon which the boats operated would not change their situs for purposes of taxation.

COURTS—DECISIONS OF UNITED STATES COURTS AS AUTHORITY IN STATE
COURTS—CONSTRUCTION OF FEDERAL STATUTES—INTERSTATE COM-
MERCE.

8. The decisions of the Supreme Court of the United States are binding on the state courts upon matters of interstate commerce.

Taxation—Personalty—Situs of Property—Domicile of Owner—
Corporation—Residence of Stockholders.

9. Where boats of a Washington corporation were engaged in interstate commerce between Oregon and Washington, but were never permanently away from Washington, returning to the state every few days, their situs for the purpose of taxation was in Washington, and their listing for taxation in Oregon, even for the number of days actually present therein, would be improper.

Taxation—Jurisdiction—Matters Coram Non Judice.

10. The right to tax boats of a Washington corporation in Oregon does not depend on whether they have been taxed in the State of the domicile of their owner, as that question is *coram non judice.*

From Clatsop: JAMES U. CAMPBELL, Judge.

Statement by MR. JUSTICE BURNETT.

This is an injunction suit by the Callender Navigation Company, a corporation, against M. R. Pomeroy.

It appears in substance by the complaint in this suit that the plaintiff is a corporation organized under the laws of the state of Washington, having its principal office at Knappton, in that state, and owning certain steam vessels which it employs in interstate commerce between that state and Oregon. The complaint charges that the defendant, as sheriff of Clatsop County, claims the vessels in question are subject to taxation in that county; that by virtue of the provisions of Sections 3679 and 3680, L. O. L., he intends to and will note them on the assessment roll of that county for the years 1906, 1907, and 1908, at certain valuations, all description of them for that purpose having been thus far omitted; and that unless restrained, after thus listing the vessels for taxation, he will immediately seize and sell them for the pretended tax to the great and irreparable injury of the plaintiff.

After certain denials, the defendant avows his right and purpose, as such sheriff, to list the steamers upon the assessment roll and to seize them for the payment of taxes thus assessed for the years in question.

Certain parts of the answer were traversed by the

reply.   The right of the plaintiff to appear in the courts of this State was not challenged in any way in the pleadings.   The circuit court found as a fact, among other things, "that plaintiff has never paid any corporation tax to this State and has never appointed an attorney in fact within this State upon whom service of summons or other process could be made as required by the statute of the State."   After a hearing upon the pleadings and evidence, the court below rendered a decree dismissing the suit, and the plaintiff appeals.   Other facts appear in the opinion.                                        REVERSED.

For appellant there was a brief over the names of *Messrs. Charles W. & George C. Fulton,* with an oral argument by *Mr. George C. Fulton.*

For respondent there was a brief over the names of *Mr. Edmund B. Tongue,* District Attorney, and *Mr. Frank J. Taylor,* with an oral argument by *Mr. Taylor.*

MR. JUSTICE BURNETT delivered the opinion of the court.

There are three questions involved in the consideration of this case.   The first, a preliminary one, is whether or not the plaintiff has a right to appear in a court of this State in view of the finding of fact, already quoted.   The second is whether or not equity will interfere, under the circumstances here disclosed, to restrain the seizure of the property in question for a tax to be collected in Clatsop County.   This depends upon the third question, the principal one, of whether the property involved is taxable at all in the State of Oregon.

1. Under Sections 6726 to 6729, L. O. L., both inclusive, foreign corporations are required to file certain statements, pay certain entrance fees, appoint a local attorney, etc., in default of which they shall not be permitted to maintain any suit, action, or proceeding in any court of justice in this State, until such declarations shall

have been filed and such fees paid. These sections are part of the act of February 16, 1903. Section 10 of that act, being Section 6709, L. O. L., reads thus:

"A plea that any domestic corporation or foreign corporation, joint-stock company or association has not paid any tax or fee required by any law of this State, and which is then due and payable, may be interposed at any time before trial upon the merits in any action, suit or proceeding, and if issue be joined upon such plea, the same shall be first tried. Such plea cannot be made at any time by the delinquent corporation, joint-stock company or association."

In *Harrison* v. *Birrell*, 58 Or. 410, 417 (115 Pac. 141), where the right of the corporation represented by the plaintiff to do business in this State or to bring suit therein was directly challenged under the statute in question, this court held that the matter was in the nature of a plea in abatement and was waived by the defendant having plead to the merits, following the doctrine of *Hopwood* v. *Patterson,* 2 Or. 49, and *Rafferty* v. *Davis,* 54 Or. 77 (102 Pac. 305). Whether Section 6709, L. O. L., has so far modified the doctrine of *Hopwood* v. *Patterson,* 2 Or. 49, that a plea in abatement under that section, may be filed at any time before the trial on the merits, is not now necessary to be determined, because no such plea has been interposed here. It is plain, however, that the question must be raised by a plea, or Section 6709 would be meaningless. In the absence of any statement on that subject on behalf of the defendant in his answer, it is also unnecessary for us to determine here whether the provisions of the act of February 16, 1903, would apply to a corporation exclusively engaged in interstate commerce. It is sufficient to say on this point that, the right of the plaintiff to appear in court not having been challenged in the pleadings in any way, the matter is not properly before the court and can avail the defendant nothing here.

2. On the question of whether injunction will lie or not, this language is used in *Yamhill County* v. *Foster*, 53 Or. 124, 132 (99 Pac. 286) :

"It is a general rule that a court of equity will not interfere to restrain the collection of public revenue for mere illegality or irregularity in the proceedings, but its jurisdiction is confined to cases where the tax itself is not authorized by law, or is assessed on property not subject to taxation, or the persons exacting it are without authority in the premises, or have proceeded fraudulently, or some other ground of equitable interference is shown."

In the case at bar the regularity of the defendant's proceedings is not challenged so far as form or procedure is concerned. The essence of the plaintiff's contention is that the property in question is not subject to taxation in the state of Oregon in any event. We think the rule to be that, if the property is not subject to taxation in any way, injunction is a proper remedy to prevent interference with the property under a claim of right to tax it:

3. We come to the principal contention in the case, whether the property in question was taxable or not in the State of Oregon.

"Every vessel, except as is hereinafter provided, shall be registered by the collector of that collection district which includes the port to which such vessel shall belong at the time of her registry, which port shall be deemed to be that at or nearest to which the owner, if there be but one, or, if more than one, the husband or acting and managing owner of such vessel, usually resides." Section 4141, Fed. Stat. Ann. (U. S. Comp. St. 1901, p. 2808).

According to section 4312 of the same compilation (U. S. Comp. St. 1901, p. 2959) enrollment and license rest upon the same conditions as registry; the only difference in effect being that the latter allows the vessel to engage in foreign trade, while enrollment and license confine it to the coastwise trade and fisheries. It is otherwise provided in the Federal Statutes that:

"The name of every documented vessel of the United States shall be marked upon each bow and upon the stern, and the name of the home port shall also be marked upon the stern." Section 4178, Fed. Stat. Ann. (U. S. Comp. St. 1901, p. 2830).

It is further provided "that the word 'port,' as used in Section 4178, shall be construed to mean either the port where the vessel is registered or enrolled, or the place in the same district where the vessel was built or where one or more of the owners reside." 23 U. S. Stat. L. 58.

It appears in evidence that, during the three years in question, the steamers owned by the plaintiff were employed by it in the general carrying trade upon the waters of the Columbia River and its tributaries between points in Oregon, between points in Washington, and between points in Oregon and Washington, and that these vessels were enrolled in the United States Customs House for the district of Oregon, at Astoria, and had the name of each of the craft painted on both bows and on the stern with the designation of Astoria. It appears, by its articles of incorporation, admitted without dispute, that the plaintiff was incorporated on the 31st day of July, 1900, by M. P. Callender and C. H. Callender of Knappton, Pacific County, Washington, and Peter Jordon of Astoria, Clatsop County, Oregon, under the laws of Washington, and that, among others, the object for which the corporation was formed was "to purchase, acquire, and sell steamboats, steam vessels, lighters and other water craft and to operate the same for any and all purposes for hire and to engage in transporting freight and passengers and to engage in a general towage business of all kinds all for hire and toll in the Columbia River and its tributaries, and also in the waters of the Pacific Ocean and such various other places as may be determined by its board of trustees; * * and also to

operate passenger and freight boats and steamers and vessels for hire and toll on and between such route or routes and in such waters between such points and places as may be determined by the board of trustees." By its articles, also, the principal office and place of business of the corporation was declared to be at Knappton, Pacific County, State of Washington. The circuit court found as a fact:

"That at the time of the organization of said corporation and until the year 1905, the stockholders and officers of said corporation resided in the State of Washington, and said company maintained its principal office at the town of Knappton in the State of Washington, but that in the year 1905, all of the stockholders in said corporation, save one, and all the officers of said corporation transferred their residence from Washington into the State of Oregon and transferred the office of said company, where its principal business is transacted, to Astoria, in Clatsop County, Oregon, and since the year 1905, the principal office of said corporation has been maintained at Astoria, Oregon, where its books have been kept and from which the general business of the said company has been directed, has maintained a large dock at Astoria, Oregon, which is and has been, since the year 1905, made the headquarters of its boats and steamboats hereinafter mentioned, and that since 1905 the secretary and general manager of said company has resided at Astoria, in Clatsop County, Oregon. The employes of the company have resided, been employed, discharged, and paid off at said place, and during said time no office has been maintained by said company at Knappton in Pacific County, Washington, or at any other place in said state."

It further appears that the stockholders of the corporation hold their annual meeting at Knappton, in Washington, every year. It must be conceded that the plaintiff is a corporation regularly organized and existing under and by virtue of the laws of the state of Washington, and that in its articles of incorporation, Knappton, in

Pacific County, of that state, is designated as its principal office and place of business. The good faith of its organization as a Washington corporation is not called in question. It is not pretended that it is in the class designated by the sobriquet of "tramp" corporations, where citizens of one state, to avail themselves of more favorable statutory conditions than their home government allows, go into another state and there organize a corporation to carry on business in the state of their residence. Even then the federal courts and many state courts recognize the corporations thus inaugurated as valid and residents of the state where they are found and organized. The courts of other states refuse to recognize such institutions as corporations at all on the grounds that transactions of that kind are frauds upon the laws of the state where the incorporators themselves reside. The courts announcing that doctrine hold the stockholders individually liable, ignoring the so-called "corporation" altogether. But where such a concern is recognized at all, the rule is universal that the commonwealth of its birth is and must remain the state of its residence. Moreover, it appears, as stated above, that when the plaintiff corporation was formed, all the incorporators and stockholders, except one, actually dwelt at Knappton and still continued to reside there for some years afterwards. The habitation of the plaintiff is not moved by the change of residence of those who own shares of its capital stock, so that only one of such persons remains in the state of Washington while the others have immigrated to Oregon. There is no law compelling a stockholder to reside or remain in any particular place, and his going or coming cannot affect the title of the artificial person legally and fairly incorporated.

4. Knappton is a village on the north shore of the Columbia River opposite Astoria, Clatsop County, Oregon, which latter city is the port of entry of the col-

lection district of Oregon as described in Section 2586, Federal Statutes Annotated (U. S. Comp. St. 1901, p. 1780), and is the port nearest to the former place. Knappton, then, is the residence or situs of the plaintiff corporation, and if, as it had the right, it was employing vessels in the coasting trade, it was obliged, under Section 4141 of the Federal Statutes, to enroll them at Astoria. This, however, does not of itself work a change in the residence of their owner or remove the title of the property from Washington to Oregon. As said by Chief Justice TANEY in *Augusta Bank* v. *Earle,* 13 Pet. (U. S.) 519 (10 L. Ed. 274) :

"A corporation must dwell in the place of its creation and cannot migrate to another sovereignty."

This commonplace doctrine was announced by this court in *Koshland* v. *National Fire Insurance Company,* 31 Or. 205 (49 Pac. 845). The enrollment of its vessels at Astoria, for the coasting trade, was in a sense compulsory upon it and could not in good reason change its relations to its own property.

5. Just as before, unless something else is shown, movable property follows the person holding the title to it. It cannot be denied that personal property permanently located by its owner within the boundaries of a state is subject to taxation there, although he may reside elsewhere. The question inevitably narrows down to the determination of the situs of the property.

6. "Situs" or situation imports fixedness of location. In its natrual signification the term is applicable only to landed estates which are really fixed and immovable. Conventionally it is applied to personal property as annexing it to the individual to whom it belongs, its situation being primarily, in legal contemplation, where the owner happens to be at any time. It is the exception that personal property has any other situs than that of the person of its owner.

"The general rule has long been settled, as to vessels plying between the ports of different states engaged in the coastwise trade, that the domicile of the owner is the situs of a vessel for the purpose of taxation wholly irrespective of the place of enrollment, subject, however, to the exception that where a vessel engaged in interstate commerce has acquired an actual situs in any state other than the place of the domicile of the owner, it may there be taxed because within the jurisdiction of the taxing authority." *Ayer & Lord Tie Company* v. *Kentucky,* 202 U. S. 409, 421 (26 Sup. Ct. 679, 682: 50 L. Ed. 1082: 6 Ann. Cas. 205).

The principal use to which the vessels in question were put, according to the testimony, was in the carrying trade between the states of Oregon and Washington, in the prosecution of which they were constantly moving to and from different points on the Columbia River. These conditions are utterly inconsistent with fixedness of situation in fact and relegate the property to the usually accepted theory that personal chattels follow the person of the owner.   The case of *Northwestern Lumbering Company* v. *Chehalis County,* 25 Wash. 95 (64 Pac. 909: 54 L. R. A. 212: 87 Am. St. Rep. 747), is easily distinguishable from the one at bar, for there it appears that the vessels in controversy were navigated exclusively in the waters of the state of Washington and were used solely in the operations of a local lumbering concern. The same principle is characteristic of the case of *Old Dominion Steamship Co.* v. *Verginia,* 198 U. S. 299 (25 Sup. Ct. 686: 49 L. Ed. 1059: 3 Ann. Cas. 1100), where the vessels taxed were operated permanently and entirely within the limits of the state imposing the tax. The opinion sums up the matter thus:

"Our conclusion is that where vessels, though engaged in interstate commerce, are employed in such commerce wholly within the limits of the state, they are subject
Sig. 12

to taxation in that state, although they may have been registered or enrolled at a port outside its limits."

A corollary arising from this case is that enrollment of a vessel is not necessarily controlling in the determination of its situs for purposes of taxation. If, as taught by this decision, a vessel navigated exclusively within the taxing state is subject to that power of taxation because of the limits of its navigation, the fact that the sphere of its operations extends beyond the state line and takes it into interstate commerce in deed and in truth would at least set the matter at large so that its taxable situs would depend upon the residence of its owner. The reason of the rule laid down by those decisions is that the vessels were used for an extended period of time wholly within the waters of the state, under whose authority the tax was laid. In the present case the reason of the rule fails because the voyages of the boats extend continually back and forth between the two states, bordering on the Columbia River, and the rule itself falls with its reason. The feature that the appellant's water craft are not merely auxiliary to interstate commerce, as in the Virginia case, or simply appliances of a local concern, as in the Washington decision, but are migratory in actual carriage of interstate commerce, first handed, practically differentiates this case from the class of precedents cited by the respondent.

The cases involving taxation in a particular state, of railroads which lie partly within and partly without the state, are not in point for two reasons; first and chiefly, because the roadbed and track and the franchise to operate in that state are essentially within its territory, and, second, because in none of that sort of precedents has any effort been made to tax anything except what may be said to be permanently inside the state boundaries.

7. Neither is the case altered by the fact that the vessels docked at Astoria, Oregon, and used that port as

their base of operations.   The commerce of the lower Columbia centers there.   It is the metropolis of that region.   If they would do business as common carriers in that country, vessels must go there oftener than to any other single place and practically as often as to all other points combined.   They are present there owing to the comity of this State extended to their owner, a foreign corporation, and not by any right of the owner to reside in Oregon.

8. Considering the matter in relation to vessels engaged in the interstate commerce, the decisions of the Supreme Court of the United States, to which we must yield on that question, are uniform that where such property in service as carriers in that class of business, habitually moves from one state to another, it is taxable only at the residence of its owner.   The distinction is constantly maintained by that court between railroad property and migratory shipping, and between vessels used exclusively within the taxing state and those actually voyaging from state to state in the prosecution of interstate commerce, with the result that, as to the latter class, the residence of the owner fixes the situs of the property for purposes of taxation.   Looking at this question from the standpoint of the state of Washington, the doctrine taught in *People ex rel.* v. *Miller,* 202, U. S. 584 (26 Sup. Ct. 714: 50 L. Ed. 1155), is peculiarly applicable.   The court there says:

"It is true that it has been decided that property even of a domestic corporation cannot be taxed if it is permanently out of the state, but it has not been decided, and it could not be decided, that a state may not tax its own corporations for all their property within the state during the tax year, even if every item of that property should be taken successively into another state for a day, a week, or six months, and then brought back.   Using the language of domicile, which now so frequently is

applied to inanimate things, the state of origin remains the permanent situs of the property notwithstanding its occasional excursion into foreign parts."

In the case at bar the steamers in question have never been permanently away from the state of Washington. The testimony shows that they customarily return there every few days, some of them every day, on their regular trips back and forth between the two states. One of the earliest cases on this subject was *Hays* v. *Pacific Mail Steamship Company,* 17 How. 596 (15 L. Ed. 254). The steamers there in question were registered in New York, and their owner resided there; but he used them in commerce on the Pacific Ocean between San Francisco and Panama, and between San Francisco and Oregon ports. At San Francisco they had a dock where they landed their passengers and freight, and there was also a navy yard at Benicia to which they resorted habitually for repairs, lying there often 10 or 12 days. San Francisco was substantially their headquarters on the Pacific Coast; but. the Supreme Court of the United States held that against the authority of California, who sought to assess the ships there, the vessels were not taxable, as they had not become incorporated into the property of California so as to have an actual situs in that state. In *Morgan* v. *Parham,* 16 Wall. 471 (21 L. Ed. 303), a vessel was owned by a resident of New York, was registered, and had been engaged for a number of years in the coasting trade between Mobile and New Orleans. For that purpose it was enrolled at Mobile, its captain resided there, and its officers and crew were employed and discharged there. These were subject to the supervision of the general agent, residing at New Orleans. The Alabama authorities were restrained by the decision of the Supreme Court of the United States from taxing the boats at Mobile. *St. Louis* v. *Ferry Co.,* 11 Wall. 423

(20 L. Ed. 192), is another case involving this question. There an Illinois corporation operated ferry boats between the city of St. Louis, Missouri, and East St. Louis, in Illinois. St. Louis, Missouri, being the nearest point to the residence of the corporation, the boats were enrolled there. The company had its office in St. Louis, its president and other principal officers lived there, the ordinary business of the meetings of the directors were held there, and the corporate seal was kept there. The Supreme Court of the United States held that the boats were not taxable in Missouri, but only in the state of Illinois. In *Ayer & Lord Tie Co.* v. *Kentucky,* 202 U. S. 409 (26 Sup. Ct. 679: 50 L. Ed. 1082: 6 Ann. Cas. 205), an Illinois corporation engaged in business as owner of towboats plying on the Mississippi, Ohio, Tennessee, and Cumberland rivers in the states of Alabama, Mississippi, Kentucky, Missouri, Arkansas, Illinois, and Tennessee. Their vessels were enrolled at Paducah, Kentucky, and, as required by the Federal Statutes, that name was printed on the stern of the steamboats. Notwithstanding this enrollment at Paducah, at which port the plaintiffs maintained an office, bought stores, and employed seamen, yet the Supreme Court held that "as the owner of the vessels was domiciled in Illinois, and the vessels were not employed exclusively in commerce between points in the state of Kentucky, but were engaged in traffic between that state and the ports of the other state, including Illinois, it seems obvious that as a question of fact they had no permanent situs in the state of Kentucky."

9, 10. The principle underlying the taxability within the State of personal property owned by foreign corporations is its permanent situation here. There can be no such permanency of situation when the property is

being moved habitually back and forth in the odrinary prosecution of its business between this State and our sister state on the north. Under such circumstances, we cannot count the days when the property is in Oregon and when it is in Washington, or compute the length of its duration here, and strike a balance as to which state has a majority of possession so as to apportion the levy between the states or to give the State of Oregon the exclusive right to tax. Neither can we concern ourselves as whether or not plaintiff has paid taxes in the state of Washington, for we are not here to enforce the laws of that state or to determine the relations between it and its citizens. That question is *coram non judice*. The great weight of authority on the federal question here involved is that property of the kind and condition in this suit is not taxable except as the domicile of its owner, which, as we have seen in this case, is in the state of Washington.

The decree of the circuit court must therefore be reversed, and one entered here according to the prayer of plaintiff's complaint.

REVERSED: DECREE RENDERED.