Argued March 23, reversed April 25, 1916.

# VERMONT FARM MACH. CO. *v.* HALL.

### (156 Pac. 1073.)

**Bills and Notes—Bona Fide Holder—Question for Jury.**

1.   Where the note sued on was given in renewal and the original note was not returned as agreed, whether the plaintiff received the renewal note in due course before maturity *held* for the jury.

**Appeal and Error—Objections Below—Pleadings.**

2.   Where the provisions of the statute in regard to permitting foreign corporations to sue in the state courts were intended to be in furtherance of the collection of state revenue, the court will not consider technical matters of the manner of pleading such inability, when not suggested to the trial court by the parties.

**Trial—Plea in Abatement—Order of Trial.**

3.   Under Section 6709, L. O. L., providing that a plea that a foreign corporation has not paid any taxes or fee required by the law of this state, and which is then due and payable, may be interposed at any time before trial upon the merits, and if issue be joined upon such plea, it shall be tried first, where the defendant alleged that the plaintiff was a foreign corporation transacting business within the state, and had not complied with the statutory requirements relating to foreign corporations, the plea in abatement must be tried before the trial on the merits.

**Corporations—Foreign Corporations—Right of Action.**

4.   Under Section 6708, L. O. L., providing that no foreign corporation which shall have failed to pay the last annual license fee as provided by law shall be permitted to maintain any suit, action or proceedings in any court within the state while such delinquency shall continue, during the default of such corporation to file the required declaration or appoint an attorney in fact upon whom service of process may be made or to pay the statutory fee, its right to prosecute an action is suspended.

**Trial—Plea in Abatement—Order of Trial.**

5.   Under Section 6709, L. O. L., directing that a plea in abatement in an action by a foreign corporation when issue is joined thereon, shall be tried before the merits, where they were heard together without objection, the plea in abatement should have been separately submitted to the jury.

**Commerce—"Interstate Commerce"—Sales—Solicitation of Orders.**

6.   The right to solicit orders for goods to be shipped in is a necessary part of the interstate sale of commodities, and every negotiation, contract, trade and dealing by the citizens of different states, which contemplates and causes such importation, is a transaction of "interstate commerce."

**Commerce—Interstate Commerce—Sales—Right to Enforce Payment.**

7.   The right to demand and enforce payment for goods sold in interstate commerce is so directly connected with such commerce and

so essential to its existence and continuance that the imposition of unreasonable conditions upon this right must necessarily operate as a restraint or burden upon interstate commerce, with which a state has no power to interfere.

**Commerce—Interstate Commerce—Goods Sold on Commission.**

8. A foreign corporation which places its products shipped from another state in the hands of local merchants in the state to be sold on commission is engaged in interstate commerce.

**Corporations—Foreign Corporations—Sales by Sample—"Doing Business."**

9. Since taking orders to be filled by shipment of goods from another state or making sales by sample by agents coming into the state from another for that purpose is interstate commerce, in order to constitute "doing business" within this state by the plaintiff, its agent must have had ample authority to transact some substantial portion of the plaintiff's business, or to make complete sales, and not merely take orders for goods.

[As to what constitutes doing business by foreign corporation, see note in Ann. Cas. 1912A, 554.]

**Commerce—Interstate Commerce.**

10. The borrowing of fixtures from goods in original crates or boxes by agents of a foreign corporation to be replaced afterward, without the sanction of the corporation being shown, would not, of itself, change the nature of the transaction from interstate to intrastate commerce, but the real character of the business would control.

**Commerce—Interstate Commerce—Direct Sales.**

11. A foreign corporation, by maintaining an office, storing its goods in a warehouse in the state, and through its agent making sales direct from such repositories, does not engage in interstate commerce; but providing an agent with an office as a convenient place for supervising solicitors of orders and as a base for advertising is a circumstance to be considered with other pertinent facts, though that would not alone determine the nature of its business.

**Commerce—Interstate Commerce—Question for Jury.**

12. Whether the plaintiff, a foreign corporation, selling goods in the state through an agent who had no power over its goods stored in a warehouse or to complete a sale without the approval of the home office, there being some evidence that sales were made directly from the warehouse, was engaged in interstate commerce, held for the jury under the evidence.

From Marion: PERCY R. KELLY, Judge.

Department No. 2. Statement by MR. JUSTICE BEAN.

This is an action by the Vermont Farm Machine Company, a corporation, against Frank W. Hall, on

a promissory note. The cause was tried before the court and a jury, and a general verdict rendered in favor of defendant. A judgment was entered accordingly, from which plaintiff appeals.

The following is shown by the record: The note in suit bears date, January 2, 1913. On or before January 1, 1914, for value received, the subscriber thereby promises to pay to the order of the Farmers' Implement Company of Portland, Oregon, a corporation, $1,700, with interest at 6 per cent per annum. The note contains the following stipulation:

"It is agreed that this note is to be paid in installments as follows: $25.00 on or before the 30th day of Feby. A. D. 1913. $25.00 per month until paid. * * "

It is signed by Franklin W. Hall. This indorsement appears on its face, "Renewal of note dated Oct. 1912," with indorsements on the back thereof as follows: "Farmers' Implement Co., by J. K. Eaton, Secy Tr." "$25.00 paid 1–13–13." "$25.00 paid 3–20–13."

The defendant, Frank W. Hall, alleges the following in effect: On October 1, 1912, he executed to the Farmers' Implement Company his promissory note for $1,700, due January 1, 1913. Upon its maturity he was unable to meet the same, and agreed with the payee that he would make a new note and that the old one should be canceled and returned to the defendant at Turner, Oregon, by the Farmers' Implement Company from its office in Portland. Upon such express condition, and without any other consideration, the note in question was signed and left in the possession of the above company. Defendant also avers that the same was not to become operative until the old note was so canceled and returned; that the Farmers' Implement Company failed and refused to

return to the defendant the old note, and has trans-
ferred the same and negotiated the note sued on in
disregard of its agreement, and with the purpose of
defrauding the defendant; and that plaintiff obtained
said note after maturity and with knowledge of in-
firmities.    For a further and separate answer by way
of a plea in abatement defendant alleges: That plain-
tiff is a foreign corporation, transacting business in
the State of Oregon, and has not filed its declaration,
nor paid its entrance fee, as required by law before
doing business within the state, nor executed and ac-
knowledged a power of attorney, nor caused the same
to be recorded in the office of the Secretary of State.
The reply denies the material part of the new matter
of the answer, except that it admits that it has not
filed any declaration, paid any entrance fee, nor exe-
cuted a power of attorney in compliance with the laws
of this state, relating to foreign corporations trans-
acting business within the state.    It denies that it is
or ever has been doing any business within the state,
and alleges that the only business transacted by it in
the State of Oregon is interstate commerce, and that
the taking of the note and the transactions in connec-
tion therewith were all a part thereof.

Testimony was introduced on behalf of plaintiff
tending to show the following: One C. W. Swanson
had charge of plaintiff's business in several of the
coast states, including Oregon, during 1912–1914.
During a part of that time the company was selling
its cream-separators and dairy accessories by send-
ing agents to take orders from dealers, these orders
being sent to the plaintiff's home office at Bellows
Falls, Vermont, for acceptance.    Plaintiff had an
arrangement with the Oregon Transfer Company in
Portland, Oregon, whereby carload lots of its goods

were sent for storage to a warehouse maintained by the transfer company. The warehouse had no authority to deliver any goods except on direct mail or telegraphic orders from plaintiff's home office, where the orders taken by plaintiff's salesmen were accepted, and which directed the warehouse to deliver to the purchaser the goods covered by such orders. Swanson could see the goods in the warehouse and show the same to prospective purchasers, but he had no authority to interfere with the shipping, give the warehouse any orders or procure any goods therefrom. The plaintiff sold goods to the Farmers' Implement Company under an agreement made in the usual course of its business, and there was no contract made by Swanson, or anyone in Oregon, with that company without submission to the Vermont office. In December, 1912, the Farmers' Implement Company was buying a great quantity of plaintiff's goods and was behind in its payments. Notes were accepted by plaintiff as part payment on the account, with which the company tendered plaintiff a note which it had received from defendant Frank W. Hall which was then nearly due. Because of this plaintiff refused to accept the note, and Mr. Eaton, an officer of the Farmers' Implement Company, said he would try and secure a renewal of Hall's note and get security. Later Eaton reported that he could not get security for the renewal of the note which he had secured from the defendant, and plaintiff agreed to waive security and accept the new note. No books were kept in the office maintained in Portland, and Swanson was obliged to write or wire to the home office in regard to the condition of anyone's account. The plaintiff's attorney in Portland assisted in the settlement and negotiations in regard to the notes. It was agreed

there was a gross amount of about $4,800 owing from the Farmers' Implement Company to the plaintiff. The note in controversy was received in part payment thereof shortly prior to March 3, 1913, probably in the latter part of February. Plaintiff was unaware of the failure of the Farmers' Implement Company to surrender the old note.

On the part of the defendant the evidence tended to show that the note was given as a renewal note without any further consideration; that the old note mentioned was never surrendered; that the time the note in question was executed Eaton said he would send the old one to Hall; that the latter relied upon this promise; that the original note was given in payment for stock of the Farmers' Implement Company; and that Hall had made $25 payments on the new note. A. L. Heitzman testified in behalf of defendant that he had been a salesman for the company during its existence. He was thereupon asked the following question by defendant's counsel:

"Q. What, if any, instances, do you remember of where you went to the warehouse and took off pieces of separators there to substitute for pieces that you didn't have in stock in the repair supplies?"

To this counsel for plaintiff objected. This objection was overruled and an exception saved. The witness answered:

"Well, for instance, we wanted a No. 17 bowl and didn't have one in stock; we would go up to the warehouse and get one, and Mr. Eaton would give us a requisition, and we would go up there and get that bowl and take it down and make whatever change we wanted to."

This witness also testified to the effect that he informed Mr. Swanson that Eaton promised Hall that

the old note would be returned before the new one would become effective, and that the former was in the possession of the International Harvester Company which refused to surrender it. The testimony of Heitzman as to the note was disputed by C. W. Swanson, agent of plaintiff.

On the evening before the day of the close of the argument to the jury, and during the progress thereof, which, under the rules of the trial court was too late, plaintiff's counsel requested the court to instruct the jury that plaintiff was entitled to carry on the suit, as the transaction was in the nature of interstate commerce, and also requested several other instructions, and asked that in the event the case was submitted to the jury, a special verdict be required as to whether plaintiff was engaged in interstate commerce and entitled to maintain the suit.    REVERSED.

For appellant there was a brief and an oral argument by *Mr. Arthur I. Moulton.*

For respondent there was a brief with oral arguments by *Mr. Walter C. Winslow* and *Mr. Samuel M. Endicott.*

MR. JUSTICE BEAN delivered the opinion of the court.

At the close of the evidence plaintiff's counsel moved the court for a directed verdict in favor of plaintiff. It is sufficient upon this point to state that the evidence tended to show that the note in suit was given as a renewal note for one theretofore given to the Farmers' Implement Company, and that the old one was not canceled or returned as agreed.

1. If the action were brought by the Farmers' Implement Company, it could not be successfully main-

tained that that company would be entitled to collect the note in question without surrendering the old one, as the evidence tends to show there was no other consideration for the new note, and that the agent of the plaintiff conducting the negotiations had knowledge of the facts mentioned. It was proper, therefore, to submit to the jury whether or not the plaintiff received the note in due course before the same was due, and there was no error in overruling the motion for a directed verdict.

2. There was no question raised by demurrer or motion as to the manner of interposing the plea in abatement. In view of the fact that the provisions of the statute in regard to permitting a foreign corporation to maintain an action in the courts of this state are intended to be in furtherance of the collection of state revenue, we do not deem it necessary to consider technical matters of the manner of pleading such inability when the same was not suggested in any way to the trial court by the parties. The requested instructions not being timely submitted, the matter of the trial of the plea in abatement recurs under the provisions of our Code.

3. Section 6709, L. O. L., provides that a plea that a foreign corporation has not paid any tax or fee required by any law of this state, and which is then due and payable, may be interposed at any time before trial upon the merits in any action, suit or proceeding, and if issue be joined upon such plea, the same shall be first tried. For authority that the plea in abatement must be tried before the trial on the merits, see *Callender Nav. Co.* v. *Pomeroy,* 61 Or. 343 (122 Pac. 758); *Hirschfeld* v. *McCullagh,* 64 Or. 502 (127 Pac. 241, 130 Pac. 1131); *Big Basin Lbr. Co.* v. *Crater Lake Co.,* 63 Or. 359 (127 Pac. 982); *Klamath Lbr.*

*Co.* v. *Bamber,* 74 Or. 287 (142 Pac. 359, 145 Pac. 650) ; *Harrison* v. *Birrell,* 58 Or. 410 (115 Pac. 141).

4. Section 6708, L. O. L., is to the effect that no foreign corporation which shall have failed to pay the last annual license fee as provided by the law of this state shall be permitted to maintain any suit, action or proceeding in any court of justice within this state while such delinquency shall continue. During the default of such corporation to file the required declaration or to appoint an attorney in fact upon whom service of process may be made or to pay the statutory fee, its right to prosecute an action or suit in our courts is suspended: *Hirschfeld* v. *McCullagh,* 64 Or. 502 (127 Pac. 241, 130 Pac. 1131) ; *Shipman* v. *Portland Const. Co.,* 64 Or. 1 (128 Pac. 989). While the statute directs that the plea in abatement when issue is joined thereon shall be first tried, it is possible that if the court had submitted the question to the jury for determination separately, the harm would have been avoided. As the record now is, it is impossible to tell whether the jury based its verdict upon the merits, or found that the plaintiff had no right to maintain the action. This case illustrates the wisdom of the old rule in this state that the issue joined upon the plea in abatement should be interposed, tried and determined before an answer to the merits. In *Callender Nav. Co.* v. *Pomeroy,* 61 Or. 343 (122 Pac. 758), after commenting upon such a plea in abatement, Mr. Justice BURNETT makes a pertinent suggestion by stating:

"Whether Section 6709, L. O. L., has so far modified the doctrine of *Hopwood* v. *Patterson,* 2 Or. 49, that a plea in abatement under that section may be filed at any time before the trial on the merits is not now necessary to be determined, because no such plea has been interposed here. It is plain, however, that

the question must be raised by a plea, or Section 6709 would be meaningless.''

It is possible that such a disability of a party might arise on account of a default of a foreign corporation after joinder of issues upon the merits and before the trial thereof, thus rendering it impossible for the defendant to interpose a plea before pleading to the merits. The cause should be tried upon the merits, and the determination thereof made a matter of record, separate and distinct from the matter of the plea in abatement. For this reason a new trial must be had.

Referring in a note to the case of *Hopwood* v. *Patterson*, 2 Or. 49, as an authority establishing that Oregon is not among the states which pursue the practice of trying the plea in abatement together with the trial upon the merits, Mr. Pomeroy, in his work on Code Remedies (4 ed.), Section 597, at page 829, further considers the subject in the following language:

''The only possible difficulty in the practical operation of this rule arises from the different effects of a judgment in favor of the defendant, rendered upon one or the other of these classes of defenses. As such, a decision upon the former class (plea in abatement) does not destroy the plaintiff's right of action, nor prevent him from properly commencing and maintaining another suit for the same cause, while a similar decision upon the latter class does produce that final effect upon the right, and as by a general verdict given for the defendant upon all the issues contained in the record, and a judgment entered thereon, it might be difficult, and perhaps impossible to determine which of these results should follow from the judgment thus pronounced. It is plain that, at the trial of an action in which the answer unites the two kinds of defense, the judge should carefully distinguish the issues arising from them, and should submit them separately to the jury, and direct a separate and special verdict

upon each. By pursuing this course the record would show exactly the nature of the decision, and of the judgment entered thereon. This mode of procedure has been sanctioned by the highest courts.''

5. The trial court should have first tried and determined the issue joined upon the plea of the delinquency of the plaintiff, or if, without any objection and by common consent the same was heard together with the trial upon the merits, the question of the right of plaintiff to maintain the action should have been submitted and passed upon by the jury separately.

It is urged by counsel that all the transactions involved herein were purely interstate commerce, and that it was error to submit to the jury the matter of the right to maintain the action. From the evidence on behalf of plaintiff we think it may safely be conceded that its business, which is the subject of inquiry herein, was in its nature strictly interstate commerce, and not subject to the burdens imposed by the statute. Some of the testimony on the part of defendant might possibly be construed as indicating that plaintiff was transacting business in the State of Oregon. Pages 13 et seq. of the bill of exceptions show that witness Heitzman stated to the effect that after he severed his connections with the Farmers' Implement Company people, he went to work as salesman for the Vermont people; that the business was conducted by procuring an order in regular form and sending it to Portland, and from there they attended to the shipment and the like; that he did not think they wired back all the orders; that to his knowledge, in some instances, orders were filled which were not wired to the head office prior thereto. He also said that many times while he was a salesman for the company, when they wanted some part of a separator which his com-

pany did not have in stock, upon the latter's requisition they would go to the warehouse and open a box and "rob a cream-separator" of the part desired, such as a bowl, and when they got a replacement of these bowls they would replace it. It appears that repair parts were kept by the Farmers' Implement Company for sale for plaintiff on commission, title to the same remaining in the plaintiff.

6. The testimony upon a new trial may not be the same, but it may be necessary for us to note some of the rules relating to interstate commerce in such cases, although it appears that the learned trial judge plainly charged the jury in regard thereto. Transportation of property from a point in one state to a point in another is an indispensable element of interstate commerce. But the mere act of such transit is not all. A right to be free from state hindrance in the shipment of goods from state to state would be of little value if the sale of the goods after arrival was subject to burdensome state control. A right to solicit orders for goods to be shipped in, to fill such orders is a necessary part of the interstate sale of commodities. Every negotiation, contract, trade and dealing between citizens of different states, which contemplates and causes such importation, is a transaction of interstate commerce: 12 M. A. L. 211; *Robbins* v. *Shelby Co. Tax Dist.,* 120 U. S. 489 (30 L. Ed. 694, 7 Sup. Ct. Rep. 592); *Crenshaw* v. *Arkansas,* 227 U. S. 389 (57 L. Ed. 565, 33 Sup. Ct. Rep. 294); *Butler Bros. Shoe Co.* v. *United States Rubber Co.,* 156 Fed. 1–17 (84 C. C. A. 167); *International Text-Book Co.* v. *Pigg,* 217 U. S. 91; 107 (54 L. Ed. 678, 30 Sup. Ct. Rep. 481, 18 Ann. Cas. 1103, 27 L. R. A. (N. S.) 493).

7. While the state has power to require any corporation doing business in the state to secure a license,

it has no power to interfere with interstate commerce. The right to demand and enforce payment for goods sold in interstate commerce is so directly connected with such commerce, and is so essential to its existence and continuance, that the imposition of unreasonable conditions upon this right must necessarily operate as a restraint or burden upon interstate commerce: *Sioux Remedy Co.* v. *Cope,* 235 U. S. 197 (59 L. Ed. 193, 35 Sup. Ct. Rep. 57) ; *Buck Stove & Range Co.* v. *Vickers,* 226 U. S. 205 (57 L. Ed. 189, 33 Sup. Ct. Rep. 41); *Chambers* v. *Baltimore & Ohio R. R. Co.,* 207 U. S. 142, 148 (52 L. Ed. 143, 28 Sup. Ct. Rep. 34) ; *Western Union Tel. Co.* v. *Kansas,* 216 U. S. 1, 27 (54 L. Ed. 355, 30 Sup. Ct. Rep. 190).

8. A foreign corporation which places its products shipped from another state in the hands of local merchants in this state to be sold on commission is engaged in interstate commerce: *Allen* v. *Buggy Co.,* 91 Tex. 22 (40 S. W. 393, 714).

9. Taking orders to be filled by shipment of goods from another state or making sales by sample, by agents coming into the state from another state for that purpose, is not doing business within the state, but is interstate commerce with which our statute was not intended to interfere: *Ware* v. *Hamilton Brown Shoe Co.,* 92 Ala. 145 (9 South. 136) ; *Brennan* v. *Titusville,* 153 U. S. 289 (38 L. Ed. 719, 14 Sup. Ct. Rep. 829).

In *Boardman* v. *S. S. McClure Co.* (C. C.), 123 Fed. 614, the question was in regard to service of process upon a foreign corporation which, under the statute of Minnesota and the acts of Congress, must be made upon some agent who is transacting its business within the state. In the opinion we notice that in order for an agent to be transacting business for such foreign

corporation within the state, he must transact "some reasonable portion of the business" and have charge in respect to it. So in the case at bar. It appears that plaintiff's general manner of transacting business was for its salesman to solicit and obtain orders for the sale of separators to local dealers, and forward the same to the plaintiff's home office at Bellows Falls, Vermont, for acceptance, and that no agent in Oregon had authority to complete a sale or interfere with the shipment of goods, although Agent Swanson could exhibit separators to prospective purchasers. Therefore, in order to constitute doing business within this state by plaintiff, its agent must have had ample authority to transact some substantial portion of plaintiff's business; that is, make complete sales here, and not merely take orders for goods: *Hirschfeld* v. *McCullagh*, 64 Or. 502 (127 Pac. 241, 130 Pac. 1131).

10-12. We do not think that the "robbing of a separator" or the borrowing of fixtures from goods in the original crates or boxes by agents, to be replaced afterward, without the sanction of the plaintiff being shown, would, of itself, change the nature of the transaction from interstate to intrastate commerce. The real character of plaintiff's business would control in the premises. If it maintained an office and stored its goods in a warehouse in the state, and, through its agents, made sales direct from such repository, no doubt it would be doing business within the state as contradistinguished from commerce between different states: *Boardman* v. *S. S. McClure Co.* (C. C.), 123 Fed. 614, 617. Providing an agent with an office as a convenient place for supervising solicitors of orders for sales and as a kind of a base for advertising, while a circumstance to be considered with other pertinent facts, would, in our opinion, not

alone determine the nature of its business.  In the face of the evidence of Heitzman, tending to show that sales were made direct from the warehouse by plaintiff's agents without consultation in regard thereto with the home office, it was not error for the court to refuse to determine the question as a matter of law: *Boardman* v. *S. S. McClure Co.* (C. C.), 123 Fed. 614, 617) ; *Ex parte Case,* 70 Or. 291 (135 Pac. 881, 141 Pac. 746, Ann. Cas. 1916B, 490). In the latter case vehicles were shipped from Grinnell, Iowa, to Roseburg, and stored in a warehouse and sold in Oregon by agents.  At page 298 of 70 Or., at page 883 of 135 Pac., of the opinion therein, Mr. Justice Eakin says·

"When the goods were unpacked at Roseburg, they became a part of the general mass of property in the state, and were subject to the state laws as other property within the state.  They lost their character as interstate shipments when delivered at their destination and offered for sale"—citing *May* v. *New Orleans,* 178 U. S. 496 (44 L. Ed. 1165, 20 Sup. Ct. Rep. 976), and noting that *In re Kinyon,* 9 Idaho, 642 (75 Pac. 268, 2 Ann. Cas. 699), a similar case, makes the distinction that where the goods at the time of the sale are within the state and under the control and care of an agent, both the property and the business are within the jurisdiction of the state and subject to its regulation.

It should be remembered that in the present case the evidence of plaintiff tended to prove that the goods were shipped from Vermont and stored at the terminal point, in the aid, as it may be, of rapid transit, merely anticipating orders of sale.  They were not in the care of, or under the control of, the plaintiff's agent, who had no authority to extend credit for goods.  The original packages were not broken, and were sold only upon authority from plaintiff in Vermont.  In passing, it might be possible that the question propounded to defendant, Hall, upon cross-exam-

ination, as to whether he had made a request of the Farmers' Implement Company for the old note, if answered, would have led to some material information as to the location of the note. Not that a demand therefor was essential, but, for instance, to ascertain whether it was in some office and the return to the defendant had been overlooked. We do not deem the exclusion of the answer very important.

We discover no other assigned errors that are likely to occur upon a retrial. In order that the issue joined upon the plea in abatement may be first tried, and that if a trial upon the merits becomes necessary, it may be made a matter of record separate from the preliminary question, the judgment will be reversed and the cause remanded for a new trial.

REVERSED.

MR. CHIEF JUSTICE MOORE and MR. JUSTICE BENSON concur.

MR. JUSTICE HARRIS concurs in the result.