Argued May 21, affirmed June 17, 1959

SMITH ET AL *v.* COLUMBIA COUNTY ET AL

341 P. 2d 540

*William F. White,* of Portland, and *John F. McCarthy,* Longview, Washington, argued the cause and filed a brief for appellants.

*Theodore W. deLooze,* Assistant Attorney General for Oregon, argued the cause for respondents. With him on the brief was Robert Y. Thornton, Attorney General for Oregon, Salem.

Before McAllister, Chief Justice, and Lusk, Warner, Perry, Sloan, O'Connell and Millard, Justices.

MILLARD, J. (Pro Tempore)

This is an appeal by all the above named plaintiffs, including plaintiffs in intervention, from a decree of the Circuit Court of Marion County upholding the constitutionality of chapters 405, 413 and 414 of Oregon Laws 1949 insofar as such statutes provide for the assessment for taxation purposes for the year 1950 upon the tugs, barges and vessels of plaintiffs and plaintiffs in intervention operating within the inland waters of the Columbia River and its tributaries.

In discussing the merits of this case it is necessary that we set forth portions of the applicable statutes as they existed on June 1, 1950. In so doing we have excluded such sections or portions thereof as do not refer to the instant case, but only to taxation generally. The pertinent portions are as follows:

"Sec. 110-505, OCLA. It shall be the duty of the said state tax commission:

"* * *

"14. To make an annual assessment, upon an assessment roll to be prepared by said commission,

*of the property having a situs in this state,* as hereinafter defined, of all railroad companies, sleeping car companies, union station and depot companies, electric and street railway companies, express companies, telegraph companies, telephone companies, refrigerator car companies, tank line companies, private car companies, pipe line companies, toll bridge companies, heating companies, water, gas and electric companies, people's utility districts, aircraft companies engaged in air transport of passengers, freight, *express or mail and water transportation companies engaged in the business of transporting freight or passengers for hire upon the rivers in or adjoining the state of Oregon.*" (Italics supplied.) (Sec. 110-505, OCLA, as amended by Chap. 442, Oregon Laws 1947, and as further amended by Sec. 1, Chap. 414, Oregon Laws 1949, now ORS 308.515.)

Oregon Laws 1949, Chap. 405:

"Section 1. That section 110-312, O.C.L.A., as amended by section 1, chapter 359, Oregon Laws 1941, be and the same hereby is amended so as to read as follows:

"Sec. 110-312. Except as otherwise specifically provided, all personal property shall be assessed for taxation each year at its situs as of the day and hour of assessment prescribed by law; provided that boats, vessels or other watercraft registered or enrolled within this state, except such as are assessed by the state tax commission, shall be assessed in the county of such registry or enrolment. * * *

"Section 2. That section 110-313, O.C.L.A., as amended by section 1, chapter 263, Oregon Laws 1945, be and the same hereby is amended so as to read as follows:

"Sec. 110-313. 1. Except as otherwise provided by law, all ships and vessels whose home ports of registry or enrolment are in the state of Oregon, other than such as are assessed by the state tax

commission, shall be assessed at 10 per cent of the true cash value thereof; provided, however, that ships and vessels in intercoastal or foreign trade, whether actually engaged therein or laid up, shall be assessed at 1 per cent of the true cash value thereof; and provided further, that to and including the year 1951 the same rule of 1 per cent shall apply to ships and vessels which may be under original construction at the assessment date of any year, but such rule shall not apply to materials not actually in place as the constructed part of any such ship or vessel.

"* * *

"Section 3. That section 110-543, O.C.L.A., be and the same hereby is amended so as to read as follows:

"Sec. 110-543. The term 'property', as used in this act, shall be deemed to include all property, real and personal, tangible and intangible, subject to assessment for taxation under this act, belonging to the company, or held by it as occupant, lessee, or otherwise, and shall include the lands and buildings, rights of way, roadbed, water powers, cars, rolling stock, tracks, wagons, horses, office furniture, telegraph, telephone, and transmission lines, poles, wires, conduits, switchboards, machinery, appliances, appurtenances, docks, watercraft and all other property of a like or different kind, used in carrying on the business of said company, and owned, leased, or operated by it, and all other real and personal property and all franchises and special franchises; * * *

"* * *

"Section 4. That section 110-544, O.C.L.A., be and the same hereby is amended so as to read as follows:

"Sec. 110-544. The term 'property having situs in this state,' shall include all property, real and personal, of the companies included in this act, owned, leased, used, operated or occupied by them,

*and also such proportion of the watercraft, rolling stock, cars, and other personal property of a like or different kind as is used partly within and partly without the state as herein provided to be determined."* (Italics supplied) (now ORS 308.505)

Oregon Laws 1941, Chap. 440:

"Section 12. That section 110-510, O.C.L.A., be and the same hereby is amended so as to read as follows:

"Sec. 110-510. The several companies enumerated in this act, doing business in this state, hereby are required to make and file with the state tax commission, on or before the first day of February of each year, in such form and on such blanks as said commission may provide, a statement, under oath, to be made by the president, secretary, treasurer, superintendent, or chief officer of such company, covering a period of at least one year and not exceeding five years, as may be required by such commission; provided, however, that class I railroads, class A electric companies, class A telephone companies, telegraph companies and sleeping car companies shall be required to file such statement on or before the fifteenth day of March of each year. Each such statement shall contain the following facts; 1. The name of the company, the nature of the business conducted by the company, and under the laws of what state or country it is organized; the location of its principal office; the name and postoffice address of its president, secretary, auditor, treasurer, superintendent, and general manager; the name and postoffice address of the chief officer or managing agent or attorney in fact in Oregon.

"2. The number of shares of capital stock.

"3. The par value and market value, or actual value if there be no market value, of the shares of stock on the first day of January at the hour of 1 o'clock a. m. of the year in which the report is made.

"4. The bonds and other corporate obligations owing by the company.

"5. The par value and market value, or actual value if there be no market value, of the bonds or other obligations owing by the company on the first day of January at the hour of 1 o'clock a. m. of the year in which the report is made.

"6. A detailed statement of the real property owned by the company in Oregon, where situated and the value thereof.

"7. A detailed statement of the personal property, including money and credits, owned by the company in Oregon on the first day of January at the hour of 1 o'clock a. m. of the year in which the report is made, where situated and the value thereof.

"8. The total value of the real estate owned by the company situated outside of the state.

"9. A full and complete statement of the cost and actual present value of all buildings of every description owned by said company within the state.

"10. The total value of the personal property of the company situated outside of Oregon.

"11. The total length of the company's lines, the length of its lines within the state of Oregon, and also the length of its lines without the state of Oregon, including those which said company controls or uses as owner, lessee or otherwise.

"12. A statement of the number of miles of main line, branch lines, double track, spurs, yard tracks and side tracks, owned or leased by said company in each county in this state, and each municipal subdivision thereof, stated separately.

"13. A statement in detail of the entire gross receipts and net earnings of the company from all sources, stated separately, for the fiscal year next preceding the date of the report.

"14. Such other facts or information as said commission may require in the form of return prescribed by it. The commission hereby is given the

power to prescribe directions, rules and regulations to be followed in answering any requirement of this act." (Sec. 110-510, OCLA, as amended by Chap. 440, Oregon Laws 1941 (now ORS 308.520 and 308.525)).

"Section 110-512. It shall be the duty of said state tax commission to prepare each year an assessment roll, in which shall be assessed, as of the first day of January at the hour of 1 o'clock a. m. of such year, the true cash value of all the properties of the several companies subject to taxation under this act, which said assessment roll shall not be final until reviewed as herein provided. *For the purpose of arriving at the amount and character and true cash value of the property belonging to any such company, the said commission personally may inspect such property, and may take into consideration the statements filed under this Act,* the reports, statements or returns of said company filed in the office of any board, office or commission of this state, or any county thereof, the earning power of said company, the franchises and special franchises owned or used by said company, and such other evidence of any kind as may be obtainable bearing thereon; *provided, that in no event shall any report, statement or return be conclusive upon said commission in arriving at the amount and character and true cash value of the property belonging to any such company.* When any company owns, leases, operates or uses rail, wire or pipe lines or property within and without this state, if the commission shall value the entire property within and without this state as a unit, it may ascertain the property subject to taxation in Oregon by the proportion which the number of miles of rail, wire, or pipe lines in Oregon, controlled or used by said company, as owner, lessee, or otherwise, bears to the entire mileage of rail, wire or pipe lines, controlled or used by said company, as owner, lessee, or otherwise. *If the value of any property having a situs in this state, of a company*

*operating both within and without the state, cannot fairly be determined in the above manner, said commission may use any other reasonable method to determine the proper proportion of the entire property assessable for taxation in this state."* (Sec. 110-512, OCLA, as amended by Sec. 14, Ch 440, Oregon Laws 1941 (now ORS 308.540, 308.545 and 308.550)). (Italics supplied)

"The said commission, for the purpose of arriving at the actual cash value of the property assessable by it, as herein provided, may value the entire property, both within and without the state of Oregon, as a unit. *In case it shall value the entire property as a unit, either within or without the state of Oregon, or both, the commission shall make deductions of the property of said company situated outside of the state, and not connected directly with the business thereof, as may be just, to the end that the fair proportion of the property of the said company in this state may be ascertained.* If the said commission value the entire property within the state of Oregon as a unit, it shall make deductions of the property of said company situated in Oregon, and assessed by the county assessors, to an amount that shall be just; and for that purpose the county assessors shall be and they are hereby required, if the said commission request the same, to certify to the said commission the assessable value of the property of said companies assessable by them, but such certification of assessed or assessable value is intended to be advisory only, and not conclusive upon the said commission." (Sec. 110-513, OCLA (now ORS 308.555)). (Italics supplied)

"For the purpose of determining the respective amounts of the assessment of any company, under the provisions of this act, that shall be apportioned to the several counties in this state, into or through which the rail lines of said company extend or are operated, the state tax commission shall multiply the value per mile, as above ascertained, of the

several main and branch lines by the number of miles of such main and branch lines, respectively, including miles of main tracks, spurs, yard tracks and side tracks, in each of the counties, as reported by said company, or as otherwise ascertained and determined by said commission. Values distributed over wire or pipe lines, as aforesaid, shall be apportioned to the counties in which such lines are situated by multiplying the rate per mile in each case, determined as aforesaid, by the number of miles of said wire or pipe lines in said counties, respectively. *If the property of any company assessable under the provisions of this act is of such a character that its value can not reasonably be apportioned on the basis of rail, wire or pipe line mileage, said commission may adopt such other method or basis of apportionment to the county or counties in which said property is situated as may be feasible and proper.* As determined by said commission values of electric power plants and water powers, connected with or used in the operation and business of any company, assessable under the provisions of this act, may be apportioned to the counties in which the same are situated, in such manner as said commission may deem to be reasonable and fair. Assessments of aircraft companies shall be allocated and apportioned to those counties only in which such aircraft companies make regular service landings." (Sec. 110-516, OCLA (now ORS 308.565)).

Section 1, chapter 413, Oregon Laws 1949, in amending section 110-516, OCLA, as above stated, added the following:

"*Assessments of water transportation companies shall be allocated and apportioned to those counties which border upon the rivers navigated by such companies.*" (Italics supplied)

Section 110-525, OCLA, as amended by chapter 322, Oregon Laws 1945 and as further amended by chapter

81, Oregon Laws 1947, provides for certification of the assessments made by the tax commission to the assessors of the various counties affected and for the levy and collection of taxes therein the same as other ad valorem taxes, except the commission is empowered to charge, levy and collect the tax as "personal property having a taxable situs in this state."

Except with reference to the residence of plaintiff Wilbur J. Smith, which we deem immaterial, the facts of this case have been stipulated by the parties. It should be noted at this juncture that the actual valuation of the property in question as found by the assessing officers is, by agreement of both counsel made at the time of argument here, not an issue in this case. The stipulation is as follows:

"It is hereby stipulated and agreed by and between the respective plaintiffs and the defendants herein, for the purpose of this proceeding, as follows:

"1. That the plaintiff Longview Tugboat Company is now and at all times mentioned in the complaint was a corporation organized under the laws of the State of Washington and has not been qualified to do business in the State of Oregon; that the plaintiffs Elmer Danielsen dba Puget Island Ferry and Esson H. Smith dba C. T. Smith and Son now are and at all times mentioned in the complaint were residents of the State of Washington; that the question as to the residence of the Plaintiff Wilbur J. Smith is to be determined upon the evidence presented to the court in this proceeding.

"2. That the ordinary course of business of the plaintiff Elmer Danielsen dba Puget Island Ferry is the transportation for hire of passengers and vehicles on the Columbia River between Puget Island, Washington, and Westport, Oregon, and that of the plaintiffs Wilbur J. Smith, Longview Tug-

boat Company and Esson H. Smith dba C. T. Smith and Son, is the transportation of freight for hire, without any fixed termini and on an 'on call' basis, on the Columbia River and its tributaries between various points in the State of Oregon and various points in the State of Washington, and that the operations of plaintiffs have been carried on without substantial interruption throughout the year for a period of approximately twenty years.

"3. The tugs, barges, and other vessels owned and operated by the respective plaintiffs were for the 24 hour period constituting the first day of January, 1950, physically located in the State of Washington with the exception of the tugboats Dixie, Barnacle, and Volcano and the Holk F-18 owned by the plaintiff Wilbur J. Smith which were located in the State of Oregon; that the tugs, barges, and vessels owned by the respective plaintiffs were assessed at their full cash value in the State of Washington for the year 1950; that taxes to the extent of 5 mills in accordance with Remington Revised Statutes, Sec. 11 111-2, 11 222, of the State of Washington, have been paid by said plaintiffs to the State of Washington.

"4. That there are a number of water carriers operating for hire between points along the Pacific Coast in the State of Oregon; that there are a number of water carriers operating for hire between points on the Columbia River and other rivers in the State of Oregon and points along the Pacific Coast without the State of Oregon; that there are a number of vessels operating for hire in intercoastal and foreign trade to and from points on the Columbia River and other rivers in the State of Oregon; that there are a number of tugboats, barges and other vessels owned and used by individuals and corporations for the transportation of the owners private property on the rivers in or bordering upon the State of Oregon.

"5. That a majority of the total tonnage transported by plaintiffs, Wilbur J. Smith and Longview

Tugboat Company originated in the State of Oregon and terminated in the State of Washington, the latter transporting freight primarily for the Longbell Lumber Company, Longview, Washington.

"6. That approximately an equal amount of the passenger and vehicle transported by the plaintiff Elmer Danielsen dba Puget Island Ferry, originated and terminated in the States of Oregon and Washington.

"7. That a minority of the tonnage transported by the plaintiff Esson H. Smith dba C. T. Smith and Son either originates or terminates in the State of Oregon.

"8. That in so far as Wilbur J. Smith is concerned, the office where the business of the company has been transacted for approximately 20 years including the keeping of operating books and records, the dispatch of tugs, payment of crews, etc., is located at Rainier, Oregon.

"9. That in so far as the Longview Tugboat Company is concerned, Longview, Washington, is the principal place of business but for the last five years it has continuously maintained an office for the keeping of operating books and records, the dispatching of vessels and the payment of crews at Rainier, Oregon.

"10. That in so far as Elmer Danielsen dba Puget Island Ferry and Esson H. Smith dba C. T. Smith and Son are concerned, their principal office and places of business for the keeping of operating books and records, the dispatching of vessels and the payment of crews have been and continue to be in the State of Washington.

"11. That Wilbur J. Smith owns and maintains real property and facilities for the docking and moorage of vessels and the making of minor repairs at Rainier, Oregon; that Longview Tugboat Company utilizes such facilities of Wilbur J. Smith on a per diem basis; that Elmer Danielsen dba Puget Island Ferry uses a ferry slip and apron at

Westport, Oregon; that Esson H. Smith dba C. T. Smith and Son maintains terminal facilities at Stevenson, Washington.

"12. That Wilbur J. Smith and Esson H. Smith dba C. T. Smith and Son owns, leases and maintains in both Oregon and Washington land dolphins, pilings, and other facilities for the moorage and storage of log rafts in transit.

"13. That Longview Tugboat Company utilized the moorage facilities of Wilbur J. Smith and others in both Oregon and Washington for the moorage of log rafts in transit, upon a per diem basis.

"14. That the vessels owned and operated by the plaintiffs and used in the operation of their water transportation businesses for the year 1949 consisted, in so far as Wilbur J. Smith is concerned, of 14 tugs and 4 barges; in so far as Longview Tugboat Company is concerned, of 2 tugs and 1 barge; in so far as Esson H. Smith dba C. T. Smith and Son is concerned, of 6 tugs; in so far as Elmer Danielsen dba Puget Island Ferry is concerned, of 1 ferry boat.

"15. That the vessels and facilities described in paragraph 11, 12, 13 and 14 hereof are used with consistent regularity by the companies involved, throughout the calendar year although not on a regularly defined schedule, and constitute a necessary and integral part of their business as described herein.

"16. That all of the allegations in the complaint of the plaintiffs which are not denied in the answers of the defendants are deemed admitted."

It is the contention of plaintiffs in this case that the legislative enactments of 1949 and the prior laws of which they are amendatory are so amended or enlarged as they apply to the facts here as to render such statutes invalid, first, as being in violation of the

Fourteenth Amendment to the Constitution of the United States relating to equal protection of the laws; second, that such statutes constitute an undue burden and restraint upon interstate commerce in that, under the commerce clause of the United States Constitution, no state may, either directly or indirectly nor under any guise, tax the right to engage in interstate commerce; third, that such statutes are in violation of 11 Statutes at Large of the United States, commonly known as the Oregon Admission Act, which was approved and accepted by the Legislative Assembly of Oregon on June 3, 1859; fourth, that these statutory provisions violate Article I, section 32 of the Constitution of Oregon which requires uniformity of taxation within the same classification; and, fifth, that such statutes violate Article IX, section 1 of the Constitution of Oregon relating to the requirement of uniformity of assessment and taxation.

With relation to the first point, i.e., equal protection of the laws guaranteed by the Fourteenth Amendment to the United States Constitution, plaintiffs concede that generally a state may make reasonable and rational classifications of property for taxation purposes so long as there is equality and uniformity within each class.

"The equal protection clause does not detract from the right of the state justly to exert its taxing power or prevent it from adjusting its legislation to differences in situation or forbid classification in that connection, 'but it does require that the classification be not arbitrary but based on a real and substantial difference having a reasonable relation to the subject of the particular legislation.'" *Quaker City Cab Co. v. Pennsylvania,* 277 US 389, 400, 72 L Ed 927.

"It does not, however, forbid classification; and the power of the state to classify for purposes

of taxation is of wide range and flexibility, provided always, that the classification 'must be reasonable, not arbitrary, and must rest upon some ground of difference having a fair and substantial relation to the object of the legislation, so that all persons similarly circumstanced shall be treated alike.' F. S. Royster Guano Co. v. Virginia, 253 U.S. 412, 415, 64 L.ed. 989, 990, 40 Sup.Ct.Rep 560; Air-Way Electric Appliance Corp. v. Day, 266 U.S. 71, 85, 68 L.ed. 169, 177, 45 Sup.Ct. Rep. 12; Schlesinger v. Wisconsin, 270 U.S. 230, 240, 70 L.ed. 557, 564, 43 A.L.R. 1224, 46 Sup.Ct.Rep. 260. That is to say, mere difference is not enough; the attempted classification must always rest upon some difference which bears a reasonable and just relation to the act in respect to which the classification is proposed, and can never be made arbitrarily and without any such basis. Gulf, C. & S.F.R. Co. v. Ellis, 165 U.S. 150, 155, 41 L.ed. 666, 668, 17 Sup.Ct. Rep. 255. Discriminations of an unusual character especially suggest careful consideration to determine whether they are obnoxious to the constitutional provision." *Louisville Gas & Electric Co. v. Coleman*, 277 U.S. 32, 72 L.ed. 770.

In the instant case the classification extends to "water transportation companies engaged in the business of transporting freight or passengers for hire upon the rivers in or adjoining the State of Oregon." Plaintiffs contend that this classification results in discrimination as to them in the following particulars. First, they say their property should be assessed and taxed as vessels and not upon the value of the owner's entire business. Plaintiffs' assumption is incorrect. In the first place, it is obvious from a reading of the statutes involved that plaintiffs are only taxed proportionately, determined by a consideration of all their properties in Oregon with relation to their properties elsewhere, having due regard to their total income

as some indication of the true cash value of their total properties. In connection with this it should also be pointed out that OCLA, Sec. 110-513, above set forth, permits the Tax Commission to value the property of interstate enterprises as a unit before determining the proportionate part thereof that is taxable in this state. The fact that methods of assessment may vary does not render such assessments invalid so long as the basic rule of relative uniformity required in this state with reference to assessment at true cash value of properties having a situs in Oregon was followed. In fact, it was conceded in the oral argument that actual valuation was not an issue. Unless some such method was used, it would be virtually impossible to tax passenger or freight airplane carriers, railroads, electrical companies and the like at all.

But plaintiffs say there is discrimination because similar vessels operating as "for hire" carriers between points on the Columbia River and points outside the Columbia bar, and also vessels operating "for hire" along the Oregon coast are not included and, hence, taxed at the same rate; that in addition owners of similar vessels engaged in the transportation of their own property on rivers in or bordering upon the State of Oregon are not included. As to the last, we think there is a very real difference between vessels used by private owners and "for hire" carriers with particular reference to the method of taxation. A private owner who transports his own goods may be totally engaged in the pursuit of pleasure rather than profit and hence is not a "for hire carrier." There is not, therefore, any reason to require such owner to report his income or to make any determination of what proportion of his business was transacted in this state or as between counties any more than it would

be sensible to require an automobile owner of a private car to report his out-of-state trips or his trips to other counties in order to determine what county should share in the tax imposed. In other words, he fits reasonably into another classification. Further, it appears there is a very real reason for distinguishing between "for hire" carriers along a river and "for hire" carriers operating in ocean waters, even though the vessels last referred to may also partially operate within the rivers. Many of such vessels may be registered and enrolled in foreign countries and hence, governed by treaty regulation and reciprocity. Furthermore, the legislature was then presumably aware that under the United States Supreme Court decisions it had not yet been held that oceangoing vessels could be taxed other than at the domicile of the owner or in the state where they were registered and enrolled. There is nothing here indicating that plaintiffs are discriminated against because of diversity of citizenship, since the classification is based solely on use of the rivers in or adjoining the State of Oregon. Further, there is a distinction between oceangoing vessels and river vessels as the very terms imply, as well as in the matter of construction and consequent investment and the service they render in that they only operate locally and for short distances. Further, their revenue depends more on volume of business than miles traveled.

██ We use the term "oceangoing vessels" advisedly. Section 2 of Chapter 405, Oregon Laws 1949 which amends OCLA, Section 110-313, and which is above set forth, provided that "all ships and vessels whose home ports of registry or enrolment are in the State of Oregon, *other than such as are assessed by the state tax commission,* shall be assessed at 10 per cent

of the true cash value thereof; * * *." (Emphasis ours.) We hold that by the use of the words "other than such as are assessed by the state tax commission" the legislature plainly intended to and did except from the operation of such section of the statute "water transportation companies engaged in the business of transporting freight or passengers for hire upon the rivers in or adjoining the state of Oregon." That is because other provisions of the law heretofore set forth require the Tax Commission to make assessments with reference to the classification last referred to at its true cash value. See Section 110-512 OCLA, above quoted. And in making such assessments, we hold no distinction may be made between vessels enrolled and registered in Oregon and in other states, so that citizens of Oregon and Washington are treated alike, since boats or vessels coming within the classification are now assessed by the Tax Commission rather than the assessor. In other words, we hold that the attempted classification here is exclusively confined to river traffic. At this juncture, we should clearly point out that we are not here concerned with the actual administration of the law, since there is no issue on that, but only with the question of constitutionality. As a matter of law, a classification will be sustained when it is based upon something substantial and is not arbitrary and unreasonable. What then are the legal tests for determining the reasonableness of a classification?

"*First. Validity of the Tax Qua Tax.* It is inherent in the exercise of the power to tax that a state be free to select the subjects of taxation and to grant exemptions. Neither due process nor equal protection imposes upon a state any rigid rule of equality of taxation. See *Bell's Gap R. Co. v. Pennsylvania,* 134 U.S. 232, 237; *Lawrence v. State*

*Tax Comm'n,* 286 U.S. 276, 284. This Court has repeatedly held that inequalities which result from a singling out of one particular class for taxation or exemption, infringe no constitutional limitation. *Magoun v. Illinois Trust & Savings Bank,* 170 U.S. 283, 293; *American Sugar Refining Co. v. Louisiana,* 179 U.S. 89, 94; *Armour Packing Co. v. Lacy,* 200 U.S. 226, 235; *Brown-Forman Co. v. Kentucky,* 217 U.S. 563, 573; *Quong Wing v. Kirkendall,* 223 U.S. 59, 62, 63; *Armour & Co. v. Virginia,* 246 U.S. 1, 6; *Alaska Fish Co. v. Smith,* 255 U.S. 44, 48; *State Board of Tax Comm'rs v. Jackson,* 283 U.S. 527, 537; *Broad River Power Co. v. Query,* 288 U.S. 178, 180; *Fox v. Standard Oil Co.,* 294 U.S. 87, 97; *Cincinnati Soap Co. v. United States, ante,* p 308; *Great Atlantic & Pacific Tea Co. v. Grosjean, ante,* p. 412.

"Like considerations govern exemptions from the operation of a tax imposed on the members of a class. A legislature is not bound to tax every member of a class or none. It may make distinctions of degree having a rational basis, and when subjected to judicial scrutiny they must be presumed to rest on that basis if there is any conceivable state of facts which would support it. *Rast v. Van Deman & Lewis Co.,* 240 U.S. 342, 357; *Heisler v. Thomas Colliery Co.,* 260 U.S. 245, 255; *Swiss Oil Corp. v. Shanks,* 273 U.S. 407, 413; *Lawrence v. State Tax Comm'n, supra; cf. Metropolitan Casualty Insurance Co. v. Brownell,* 294 U.S. 580, 584.

"This restriction upon the judicial function, in passing on the constitutionality of statutes, is not artificial or irrational. A state legislature, in the enactment of laws, has the widest possible latitude within the limits of the Constitution. In the nature of the case it cannot record a complete catalogue of the considerations which move its members to enact laws. In the absence of such a record courts cannot assume that its action is capricious, or that, with its informed acquaintance with local conditions to which the legislation is to be applied, it

was not aware of facts which afford reasonable basis for its action. Only by faithful adherence to this guiding principle of judicial review of legislation is it possible to preserve to the legislative branch its rightful independence and its ability to function." *Carmichael v. Southern Coal Co.,* 301 U.S. 495, 509, 510, 81 L.Ed. 1245.

See, also, *Garbade and Boynton v. City of Portland,* 188 Or 158, 192, 214 P2d 1000; *Campbell et al. v. Aldrich et al.,* 159 Or 208, 220, 79 P2d 257.

■■ Further than that, exact equality is not required because it is impossible of achievement.

"There is therefore no precise application of the rule of reasonableness of classification, and the rule of equality permits many practical inequalities. And necessarily so. In a classification for governmental purposes there cannot be an exact exclusion or inclusion of persons and things. * * * And if the constituents of each class are affected alike, the rule of equality prescribed by the cases is satisfied. In other words, the law operates 'equally and uniformly upon all persons in similar circumstances.' " (*Magoun v. Illinois Trust & Savings Bank,* 170 U.S. 283, at page 296, 42 L.Ed. 1037).

Further, where there are different classifications, all of the classifications need not be treated alike. *Heisler v. Thomas Colliery Co.,* 260 US 245, 67 L Ed 237; *Bell's Gap R. Co. v. Pennsylvania,* 134 US 232. Further than that, classifications may be subclassified without violating the principle of "equal protection." *Carmichael v. Southern Coal Co.,* supra. As was stated in *State v. Kozer,* supra, at page 580:

"* * * Furthermore, this power of classification, which is vested in the legislature, implies the right to subclassify, if there is a reasonable

basis therefor: Cooley on Taxation (4 ed.), Sec. 365. It is unconstitutional to discriminate against certain classes without reason and without relation to the general purpose of our motor vehicle laws, but the mere fact that one class if favored over another is not cause for complaint. Classification implies that very thing.  *  *  *

"In *Bradley v. Richmond,* 227 U.S. 477, (57 L.Ed. 603, 33 Sup.Ct.Rep. 318), it is said:

" 'In order to render the classification illegal, the party assailing it must show that the business discriminated against is precisely the same as that included in the class alleged to be favored.' "

■■ We have already said that classification is exclusively a legislative problem and the legislature is not required to give any index or catalog of its reasons for the classification. See, *Carmichael v. Southern Coal Co.,* supra; *Garbade and Boynton v. City of Portland,* supra. Further, in determining the constitutionality of a statute, every reasonable intendment is in favor of validity, and it should not be declared unconstitutional unless shown to be so beyond a reasonable doubt. *State v. Kozer,* supra, at page 586.

■ Applying the law as above stated to the facts of the instant case, we hold that the classification established by the legislature to be reasonable and not arbitrary. We opine that the designation "water transportation companies" is sufficiently different to justify a separate and distinct classification for taxation purposes in the same way that "railroads" or "canal companies" could be separately classified. But there are two more requirements. The companies must be engaged in the business of transporting freight or passengers for hire and the transportation must be upon rivers in or adjoining the State of Oregon. Since at least one of the involved rivers, the Columbia, is

capable of supporting a great volume of river commerce, and since it borders on many counties in Oregon, it is of absolute necessity that a separate classification be created for the purpose of fairly allocating assessment of these companies on a proportionate basis to the counties in which they operate.

We have already noted that the statutes have reference to "water transportation companies." We construe this designation as also including individuals as well as corporations. While the word "company" usually imports a corporation, it is not so limited when applied to construction of statutes relating to taxation. Generally, a constitutional construction is to be preferred since we cannot assume that the legislature intended an unconstitutional result. Such construction has been adopted by other courts in similar cases relating to taxation. *Singer Mfg. Co. v. Wright,* 97 Ga 114, 25 SE 249, 251, 35 LRA 497; *Singer Mfg. Co. v. Wright,* (CCGA), 37 F 121, 127; *State Board of Assessors v. Central R. Co.,* 48 NJL (19 Vroom) 146, 4 A 578. The cases last cited also hold that violation of the rules relating to classification does not occur by the designation of one particular type of business as constituting a separate class such as "railroad and canal companies" or "sewing machine manufacturers and agents." While there is a difference between various properties, it need not be great or conspicuous to warrant classification for taxation. *Whier v. Dye,* 105 Mont 347, 73 P2d 209; *Citizens' Telephone Co. v. Fuller,* 229 US 322, 331, 33 SCt 833, 57 L Ed 1206; *Keeney v. New York,* 222 US 525, 536, 32 SCt 105, 56 L Ed 299, 38 LRA (NS) 1139.

We now pass to plaintiffs' next contention to the effect that such statutes constitute an undue burden and restraint upon interstate commerce. As plaintiffs

contend, it is a fundamental principle that under the commerce clause of the United States Constitution no state may, either directly or indirectly nor under any guise, tax the right to engage in interstate commerce, and that it makes no difference what the tax is called if it is a tax on such right. At this point attention should be called to the proposition that a tax on the right to engage in interstate commerce is a different tax than one levied and assessed on goods in interstate commerce. Plaintiffs say that here the state is attempting to tax the right rather than the goods, since the taxpayer must furnish the information required by Section 110-510, OCLA, and further, under Section 110-512, OCLA, as amended by Oregon Laws 1941, page 762, the Tax Commission may give consideration to such information, including income, indebtedness, property, both within and without the state, franchises, etc. Of course, "true cash value" is the statutory and basic rule of assessment and taxation in this state. Section 110-335, OCLA, as amended by Oregon Laws 1941, chapter 440, section 4. Various methods may be used to reach that result so long as this basic rule is followed. *Robinson v. State Tax Commission,* 216 Or. 532, 339 P2d 432. The "unit" or "system" method of valuation, when the total value is fairly apportioned to the commerce carried on within the taxing state, does not result in a tax upon earnings or upon property not within the state. *St. Louis S. W. Ry. v. Arkansas,* 235 US 350, 35 SCt 99, 59 L Ed 265. It only offends when the method used results in a tax on property outside the state. *Fargo v. Hart,* 193 US 490; *Wallace v. Hines,* 253 US 66. The "system" method of assessment does not offend if it is only used to tax property within the state. *Western Union Tel. Co. v. Gottlieb,* 190 US 412; *Northern Pacific Ry. Co.*

*v. Adams County,* 1 Fed Supp 163. See, also, *Knappton Towboat Co. v. Chambers et al.,* 202 Or 618, 207 Or 702, 276 P2d 425, 277 P2d 763 (1954) where there was a reversal because of a poor result with regard to a 1950 assessment under the statutes in question. However, at page 629, it was pointed out that such statute did not set forth a cut-and-dried formula that the tax commission must follow. It is to be noted that section 110-512, OCLA, only states that the tax commission "may take into consideration" the information required to be furnished.

■ We hold that the furnishing of such information was for the sole purpose of enabling the commission to determine the true cash value of property within this state and for no other purpose. Since there is nothing in the record to indicate that the Tax Commission followed any system that, in fact, resulted in taxing property outside the state, it follows that the right to engage in interstate commerce was not here taxed, so far as we can determine.

■ On the other hand, property employed in interstate commerce which has a tax situs in Oregon is subject to ad valorem taxation, and thus the imposition of such a tax does not violate either the due process clause of the Fourteenth Amendment or the commerce clause of the United States Constitution. *Ott v. Mississippi Valley Barge Line,* 336 US 169. In that case Louisiana levied ad valorem taxes on vessels owned by foreign corporations which transported freight in interstate commerce up and down the Mississippi and other rivers. The owners had agents in the state, but their principle business was elsewhere and the vessels were in Louisiana a comparatively short time on each trip. Taxes were levied on a

proportionate basis based on a ratio between the number of miles traveled in the state as compared with the number of miles traveled outside. In effect, it was held that this was sufficient to afford a situs for taxation on a proportional basis and hence no violation of either the Fourteenth Amendment or the commerce clause. Except for other matters we have already resolved, this disposes of plaintiffs' contention that the statutes involved cast an undue burden and restraint upon interstate commerce.

█ Plaintiffs next contend that the statutes under attack violate the Oregon Admission Act. This statute (11 Stat 383, 5 ORS, sec 2, p 1079) admitting Oregon to the Union provides as follows:

> "That the said State of Oregon shall have concurrent jurisdiction on the Columbia and all other rivers and waters bordering on the said State of Oregon, so far as the same shall form a common boundary to said State, and any other State or States now or hereafter to be formed or bounded by the same; and *said rivers and waters, and all the navigable waters of said State, shall be common highways and forever free, as well as to the inhabitants of said State, as to all other citizens of the United States, without any tax, duty, impost, or toll therefor.*" (Italics supplied)

It is obvious from a mere reading of this section that the words "without tax, duty, impost or toll therefor" simply refer to the right to travel therein without the imposition of any tax, duty, impost or toll therefor as a condition precedent to such right or as a charge for the privilege, etc. No one here contends that plaintiffs must, under this statute involved, pay their taxes before any use is made of the river. But plaintiffs say that because their franchises are taxed, the rights

to the use of the river are also taxed. As previously pointed out, plaintiffs make a wrong assumption. The tax commission is not required to tax franchises, but "may" consider the same for the purpose of arriving at the proportionate value of its property in Oregon in the same way that consideration of income may to some extent be some evidence of the actual value of the thing from which income is derived. The case of *Pittsburgh & Southern Coal Co. v. Louisiana,* 156 US 590, 39 L Ed 544, 15 SCt 459, cited by plaintiffs, is not in point. That case did not involve the imposition of ad valorem taxes or any tax as a condition to the right to the use of the river. In fact, plaintiffs, at page 39 of their brief, concede that they have not yet been denied the right to the use of the river. In *Cardwell v. American Bridge Co.,* 113 US 205, 28 L Ed 959, relating to the California Admission Act which contained a similar provision, it was held that such provision was only a condition of admission to the Union and that such a clause was to be considered "as in no way impairing the power which the State could exercise on the subject if the clause had no existence." Further than that, it was held that the provision relating to imposition of duties or tolls, etc. was for the purpose of preventing obstruction of the river, and that the words of the statute relating to common highways must be construed along with the words "without any tax, impost or duty therefor" as accomplishing only one object, i.e., unobstructed navigation. In *Reeves v. Island Creek Fuel & Transportation Co.,* 313 Ky 400, 230 SW2d 924, where a similar problem was involved having to do with taxation of vessels owned by a foreign corporation traversing the Ohio River, it was held that, despite the Ordinance of 1787 and the Compact of Kentucky with Virginia to the

effect that use of the waters of the Ohio River should be "free and common," the imposition of ad valorem taxes was "not an attempt to impose a usage tax on navigation, or a license tax, or any tax because of the transportation or the right of transit through the state." See, also, cases there cited.

In consideration of the views above expressed, we hold that, in any event, there is no violation of the Oregon Admission Act.

■ We next turn to plaintiffs' contentions that the statutes in question violate Article I, Section 32 and Article IX, Section 1, of the Constitution of Oregon relating to uniformity of operation of law and of assessment and taxation. We agree with plaintiffs to the effect that a disposition of the points already discussed control here, and hence, we find these contentions without merit.

In the case of *Callender Navigation Co. v. Pomeroy,* 61 Or 343, 122 P 758, decided in 1912, it was held that situs of boats for taxation purposes followed the residence of the owner. The early decisions of the United States Supreme Court followed this rule. See, *St. Louis v. The Ferry Co.,* 11 Wall 423, 20 L Ed 192; *Hays v. The Pacific Mail Steamship Co.,* 17 How 596; *Morgan v. Parham,* 16 Wall 471. That is not the rule of law that now governs and as announced in *Ott v. Mississippi Valley Barge Line,* supra. Hence, *Callender Navigation Co. v. Pomeroy,* supra, insofar as it conflicts herewith is overruled.

The judgment and decree of the trial court is affirmed, each party to pay their own costs and disbursements.

SLOAN, J., did not participate in the decision of this case.