David P. IRWIN,
an individual,
*Plaintiff,*

*v.*

DEPARTMENT OF REVENUE,
*Defendant.*

(TC 4293)

COUNTRY DEVELOPMENT, LLC,
an Oregon limited liability company,
*Plaintiff,*

*v.*

DEPARTMENT OF REVENUE,
*Defendant.*

(TC 4292)

Jeffrey J. BAKER,
an individual,
*Plaintiff,*

*v.*

DEPARTMENT OF REVENUE,
*Defendant.*

(TC 4312)

WILLAMETTE INDUSTRIES, INC.,
an Oregon corporation,
*Plaintiff,*

*v.*

DEPARTMENT OF REVENUE,
*Defendant.*

(TC 4313)

Douglas D. LINDAHL,
an individual,
*Plaintiff,*

*v.*

DEPARTMENT OF REVENUE,
*Defendant.*

(TC 4314)

Oral argument on cross motions for summary judgment was held November 16, 1998, in the courtroom of the Oregon Tax Court, Salem.

John F. Neupert, Miller, Nash, Wiener, Hager & Carlsen, Portland, argued the cause for Plaintiffs (taxpayers).

Marilyn J. Harbur, Assistant Attorney General, Department of Justice, Salem, argued the cause for Defendant (the department).

Decision for Defendant rendered July 21, 1999.

### CARL N. BYERS, Judge.

Plaintiffs (taxpayers) in these consolidated cases all protest and appeal from imposition of the Western Oregon Forestland and Privilege Tax (WOPT) on timber harvested from their lands. Taxpayers claim that the tax is not applicable to them and, if applicable, it violates various provisions of the Oregon Constitution and the Fourteenth Amendment (Equal Protection Clause) to the United States Constitution. There is no dispute of material fact, and the matter is before the court on taxpayers' motion for partial summary judgment and Defendant Department of Revenue's (the department) cross-motion for summary judgment.

### FACTS

Taxpayers own properties in western Oregon that are not subject to any special assessment, exemption, or senior tax deferral program. Also, taxpayers' properties are not taxed under the Western Oregon Small Tract Optional Tax. *See generally* ORS 321.705 to ORS 321.765.[1] During the

---

[1] All references to the Oregon Revised Statutes are to 1997.

years in issue, the properties were not designated as forestland or classified as forestland for tax purposes under ORS chapter 321. Taxpayers' properties were assessed at 100 percent of their real market value, and taxpayers paid ad valorem property taxes on such value. Each of the taxpayers harvested timber from their respective properties in either 1996 or 1997. Each paid a WOPT for the privilege of harvesting such timber, each claimed a refund, and the department denied all refund claims. Taxpayers then appealed to the Oregon Tax Court.[2]

## STATUTORY BACKGROUND

Taxpayers allege and the department admits that, historically, standing timber was included in the definition of real property and taxed as such. In 1961, the legislature enacted a severance tax in lieu of an ad valorem property tax on timber in eastern Oregon. Or Laws 1961, ch 627, § 3. In 1977, the legislature enacted a law providing similar treatment for timber in western Oregon. Or Laws 1977, ch 892, § 4. In November 1990, the people of Oregon adopted Measure 5, adding section 11b to Article XI of the Oregon Constitution. That section imposes a dollar limitation on property taxation.

In response to an Attorney General's opinion that both the eastern and the western Oregon severance tax came within section 11b, the 1991 Legislature suspended those tax laws and enacted a privilege tax in their places. Or Laws 1991, ch 459, §§ 276, 277, 300. In 1993, the legislature repealed the severance taxes and replaced them with the current WOPT and the similar Eastern Oregon Privilege Tax (EOPT). Or Laws 1993, ch 801, §§ 6, 27.

Taxpayers' Complaints set forth six separate claims, all of which raise only legal issues.

## ISSUE NO. 1

Is the harvesting of timber from land in western Oregon that is neither classified nor designated as forestland

---

[2] Because taxpayers are seeking a declaratory judgment, this matter is heard directly by the Regular Division as a court of record as required by ORS 28.010.

(land on which taxpayer has paid ad valorem property taxes on 100 percent of its real market value) subject to the WOPT?

## ANALYSIS

ORS 321.272 provides:

"(1)   Effective January 1, 1994:

"(a)   All timber in western Oregon shall be exempt from ad valorem taxation.

"(b)   For the privilege of harvesting timber from privately owned *land* in western Oregon a tax is imposed as provided in ORS 321.257 to 321.322.

"(c)   The tax imposed by paragraph (b) of this subsection is intended to recover the annuitized value of forgone property taxes on *forestland*.

"(2)   Effective July 1, 1994, all *forestland* in western Oregon shall be assessed and taxed and the value determined under ORS 308.205, 308.232, 321.348, 321.352, 321.353 and 321.357." (Emphasis added.)

The clear language of paragraph (b) imposes a tax on timber harvested from taxpayers' lands. Taxpayers contend that paragraph (b) should read "privately owned *forestland*." Taxpayers' argument rests on ORS 321.272, which describes one purpose of the privilege tax in terms of recovering foregone property taxes from "forestland." Taxpayers' lands are not "forestlands" and, because they pay ad valorem property taxes on the full value, there are no "foregone taxes."

While the imposition of the tax is clear, the error, if there is one, is not. It is clear that there are no foregone property taxes on taxpayers' lands. However, did the legislature intend to exempt timber harvested from such lands? The legislature has provided no express exemption or specific language addressing this question. There is no definition of "privately owned land" and none is needed.

The legislature has defined "forestland" as follows:

" 'Forestland' means land in western Oregon (a) which is being held or used for the predominant purpose of growing and harvesting trees of a marketable species and has been designated as forestland or (b) the highest and best

use of which is the growing and harvesting of such trees." ORS 321.257(3).

■　　　To come within the definition of part (a), forestland must be "designated." To obtain designation, an owner must make written application to the county assessor. ORS 321.358. The assessor will not designate land as forestland unless it is held or used for the predominant purpose of growing and harvesting trees of a marketable species. Unless that qualifying condition is met, such land is not forestland even though it is growing trees of a marketable species. Similarly, under part (b) of the definition, there can be land in western Oregon growing trees of a marketable species, even though some other use may actually be the highest and best use. In both instances, where the land does not qualify under the definitions contained in ORS 321.257(3), the harvesting of timber from such lands will create a liability under the WOPT.

ORS 321.273 also contains language imposing the privilege tax and the different tax rates. Subsection (1) states:

> "* * * For the privilege of harvesting timber from privately owned *land* in western Oregon * * *." (Emphasis added.)

The three subsections that follow subsection (1) set forth three different tax rates for three different time periods. In each case, the statute specifically indicates that the tax is imposed on the stumpage value of timber harvested from "privately owned *land*." In contrast, subsection (3) indicates that if timber is harvested from "land designated as reforestation land," the privilege tax will be paid at yet a different rate. Based on the language of this section alone, it is not reasonable to believe that the legislature made a mistake in ORS 321.272.

What the legislature may have intended with regard to nonforestland and fully taxed land growing trees of a marketable species in western Oregon is not clear. It may be that the statutory scheme was designed to motivate timberland owners to seek designation. Whatever the intent, if any, the legislature did not exclude or exempt such lands from the

WOPT. The words are clear, and applying the statute as written does not produce an absurd result. Therefore, the court must conclude that the statute applies to taxpayers.

Taxpayers ignore the fact that the WOPT Act does more than impose a tax on harvesting timber. It also exempts all timber in western Oregon from ad valorem property taxation and provides for special assessment of forestland at 20 percent of its statutorily determined value. That comprehensive approach is intended to motivate landowners to let their timber grow until it is ready to harvest. Although taxpayers here pay ad valorem property tax on the full value of their lands under the Act, no penalty is imposed when the land is used for something other than the growing and harvesting of trees.

The use of the word "land" by the legislature appears intentional. ORS 321.273, setting forth the rates of tax, uses the word "land" six times and never uses the word "forestland." Therefore, the court concludes that timber harvested in western Oregon from privately owned land, whether forestland or not, is subject to the WOPT.

## ISSUE NO. 2

Is the WOPT on the harvesting of timber a tax on property within the meaning of Article XI, section 11b, of the Oregon Constitution?

## ANALYSIS

Article XI, section 11b(2)(b), of the Oregon Constitution, defines a tax on property as:

> "* * * [A]ny charge imposed by a governmental unit upon property or upon a property owner as a direct consequence of ownership of that property except incurred charges and assessments for local improvements."

Taxpayers assert that the WOPT is a disguised tax on property and subject to the limitations of section 11b.[3]

---

[3] ORS 305.580 specifies that ORS 305.583, ORS 305.585, ORS 305.587, and ORS 305.589 "provide the exclusive remedy" for determining the effect of the limits of section 11b on taxes. For taxes imposed by the state, the petition must be filed in the Oregon Tax Court within 60 days of when the tax is due as provided by statute. ORS 305.583(7). Taxpayer Irwin harvested timber between May 7, 1997,

They argue that the true character of the tax is revealed by the nature of the exemptions, pointing out that ORS 321.267(1) states that "[t]he following timber and forest land are not subject to ORS 321.257 to 321.381." Taxpayers argue that because real property (timber and land) is exempt, the tax "must be a tax based on ownership of property."

Taxpayers' view is too narrow. As noted above, the statute does more than impose a privilege tax. Consequently, the "exemptions" set forth in ORS 321.267 are not just from the privilege tax, but from the entire statutory scheme. Therefore, the scope of the exemptions cannot be viewed as indicating the nature of the tax.

Taxpayers contend that the tax is imposed on property or the owner of property within the meaning of section 11b. ORS 321.257(4) imposes liability for the tax on the person who owns the severed timber at "the point at which timber that has been cut * * * is first measured in the ordinary course of business." However, ownership is merely the means of identifying the party most likely to be responsible for the harvesting of timber. It is not the existence of property or the ownership of property that triggers the tax. In the absence of the act of harvesting, no tax is imposed. It should be noted that harvesting timber involves more than just felling trees. It also includes delimbing, bucking, scaling, and retrieval from the forest. The tax imposed takes those actions into account by consideration of the differing logging costs and the "net stumpage recovery." ORS 321.282.

The law assumes that the owner of the harvested timber, at the point specified, controlled the exercise of the privilege and, therefore, is made liable for the tax. That is a reasonable assumption. In short, "the practical operation of the statute" is to tax the privilege. *Redfield et al. v. Fisher et al.*, 135 Or 180, 206, 292 P 813, 295 P 461 (1931). The distinction between ownership of property and use of property was the basis for upholding a privilege tax on the display of amusement devices. *See Fox v. Galloway*, 174 Or 339, 350, 148 P2d 922 (1944). The privilege tax imposed for the display

and May 30, 1997. He timely paid the tax thereon. Under ORS 321.287, that tax would have been due January 31, 1998. Taxpayer filed his Complaint with this court March 30, 1998, within the 60-day limit provided by statute.

of amusement devices is not a tax on property within the meaning of section 11b. *Alien Enterprises, Inc. v. Dept. of Rev.*, 12 OTR 126 (1992).

## ISSUE NO. 3

Do the WOPT and the EOPT violate Article IX, section 1, of the Oregon Constitution?

## ANALYSIS

Article IX, section 1, of the Oregon Constitution, provides:

> "* * * The Legislative Assembly shall, and the people through the initiative may, provide by law uniform rules of assessment and taxation. All taxes shall be levied and collected under general laws operating uniformly throughout the State."

Taxpayers claim that the WOPT and the EOPT are not general laws operating "uniformly throughout the State." There is an obvious disparity in the rates of tax imposed on the harvesting of timber in eastern Oregon and in western Oregon. Taxpayers contend that a state tax law must apply to the entire state.

That contention was long ago rejected in *State ex rel. v. Malheur County Court*, 185 Or 392, 203 P2d 307 (1949). In that case, noting that the uniformity requirements of Article I, section 32, and Article IX, section 1, of the Oregon Constitution, "are to be read together," the court stated:

> "* * * [I]f a tax is equal and uniform throughout the taxing district, there is no violation of the constitutional mandate." *Id.* at 411.

The legislature can impose a tax statewide or it can impose a tax within a single district. In *Jarvill v. City of Eugene*, 289 Or 157, 613 P2d 1 (1980), the city adopted ordinances imposing taxes on a downtown district. Taxpayers in that case contended that Article I, section 32, prohibited creating a territory smaller than the city for taxation. The court held:

> "* * * [W]e conclude that a classification based on or defined by geographical location is nevertheless constitutionally permissible if it is also based upon qualitative differences that distinguish the geographical area from other areas

within the territorial limits of the authority levying the tax." *Id.* at 180.

## ISSUE NO. 4

Are the WOPT and the EOPT "local laws" for assessment and collection of taxation in violation of Article IV, section 23, paragraph 10, of the Oregon Constitution?

## ANALYSIS

▬▬ Taxpayers contend that the WOPT is applicable only to the western half of the state but imposes taxes that are paid to the state in violation of Article IV, section 23, of the Oregon Constitution. However, both the WOPT and the EOPT are imposed by one law enacted by the legislature to comprehensively address the taxation of timber throughout the state. *See generally* Or Laws 1993, ch 801. The statute applies to the entire state. The division between the east and the west is one of classification, not localization.

Also, the privilege taxes imposed are not in conflict with other taxes imposed on timber. As the court stated in *Simon v. Northup*:

"'* * * The evident purpose of [Article IV, section 23, paragraph 10] was to prohibit the legislature from passing a special or local law providing a mode or manner for the assessment and collection of taxes * * * which would interfere with or contravene the method of assessing and collecting taxes as provided by the general law * * *." 27 Or 487, 500-01, 40 P 560 (1895).

Article IV, section 23, paragraph 10, of the Oregon Constitution, may also have the purpose of preventing the legislature from enacting laws, the effect of which would compel the citizens of one public corporation to pay the debts and obligations of another. *Yamhill County v. Foster*, 53 Or 124, 99 P 286 (1909). That is not the case here. All of the WOPT taxes collected in excess of administrative costs are credited to accounts of local taxing districts, which suffered diminished property tax revenues. ORS 321.307. The collected taxes are then used to offset the tax levies of the districts, thereby benefitting the area from which the taxes are raised. ORS 321.312. The court concludes that the statute is not a

local law in violation of Article IV, section 23, of the Oregon Constitution.

## ISSUES NO. 5 and 6

Taxpayers' fifth claim (violation of Article I, section 32, of the Oregon Constitution), and sixth claim (violation of the Fourteenth Amendment to the United States Constitution), commonly assert that the WOPT classification is fundamentally defective.

## ANALYSIS

■ The Supreme Court in *Standard Lbr. Co. v. Pierce et al*, made it clear that, after the 1917 amendment to the Oregon Constitution, Article I, section 32:

> "* * * [P]laces no restraint upon the power of the legislature in the matter of taxation which was not already enforced upon it by the 14th Amendment to the federal Constitution, with this qualification, if it be a qualification, that among the members or objects included in a class selected by the legislature, inherent uniformity as well as territorial uniformity is required." 112 Or 314, 335-36, 228 P 812 (1924).

Therefore, taxpayers' fifth and sixth claims may be considered together.

■ Taxpayers acknowledge "that the legislature has noted that there are qualitative differences between the forests east and west of the summit of the Cascades." Taxpayers argue that differences in forests are not a basis for a difference in the rate of tax for the privilege of harvesting timber. That is a specious argument. The purpose of making a distinction between eastern and western forest is to treat them differently. While the classification must have a reasonable relationship to the legislative purpose, there can be no doubt that the purposes set forth in ORS 321.262 justify different tax rates. *Huckaba v. Johnson*, 281 Or 23, 26, 573 P2d 305 (1978). Neither the Fourteenth Amendment nor Article I, section 32, of the Oregon Constitution, prevents the legislature from imposing different tax rates on different classes of property or taxpayers. *See Savage v. Munn*, 317 Or 283, 856 P2d 298 (1993) and *Smith et al v. Columbia County et al*, 216 Or 662, 341 P2d 540 (1959).

The legislature has determined that:

"* * * That portion of our state lying east of the summit of the Cascade Mountains differs greatly in forest tree types, soils, climate, growing conditions and topography from western Oregon." ORS 321.410(5).

Based on that determination, the legislature created a classification based upon geographical characteristics. To accomplish its legislative purposes as set out in ORS 321.262 and ORS 321.408, the legislature has imposed different conditions and different rates of tax. Those taxes are imposed on a uniform basis throughout each territory so classified. *See Jarvill*, 289 Or at 183-84. Now, therefore,

IT IS ORDERED that Plaintiffs' Motion for Partial Summary Judgment is denied, and

IT IS FURTHER ORDERED that Defendant's Cross-Motion for Summary Judgment is granted. Costs to neither party.